[Crim. No. 244. First Appellate District.—June 27, 1910.]

## THE PEOPLE, Respondent, v. W. F. GORDON, Appellant.

CRIMINAL LAW—UTTERING FICTITIOUS INSTRUMENT—PRIOR OFFENSE—ACTION TO SET ASIDE INFORMATION—ADMISSION OF NAME—RECORD UPON APPEAL—PRESUMPTION.—Where a defendant accused of uttering and passing a fictitious instrument for the payment of money to the order of W. F. Gordon, and indorsed by defendant in that name, which defendant admitted to be his true name, and also accused of a prior conviction for embezzlement under the same name, moved to set aside the information on the ground that he had not been legally committed for the prior offense, because he was committed therefor under the name of "William F. Gordon," if there were otherwise any merit in the motion, yet as there is no evidence in the record as to such commitment or its contents, or as to the name under which defendant was committed, it must be presumed that the district attorney performed his duty, and that such charge was founded upon the commitment by the magistrate.

ID.—ABSENCE OF PREJUDICE—WITHDRAWAL OF PRIOR CONVICTION.—No prejudicial error could result from denying the motion to set aside the information for illegal commitment under the prior conviction, where, before sentence, the district attorney withdrew the charge of prior conviction.

ID.—SUFFICIENCY OF INFORMATION — NONEXISTENCE OF FICTITIOUS MAKER "THEN OR THERE."—An information charging that on a specified date, "at the city and county of San Francisco," the de-

fendant feloniously uttered and passed a fictitious instrument in writing fully set forth, and bearing the signature of "H. C. Watson," and stating: "Whereas in truth and in fact there was no such individual as H. C. Watson then or there in existence," was sufficient to enable the defendant or any person of common understanding to know what was intended, and sets forth the acts charged with such degree of certainty as to enable the court to pronounce judgment upon conviction. The word "then" is very comprehensive, and if there was no such person "then" in existence, there was certainly no such person "there," at the city and county of San Francisco.

ID.—EXAMINATION OF PROSPECTIVE JURORS BY DISTRICT ATTORNEY—CROSS-EXAMINATION.—It is held that no error was committed by the district attorney in the examination of prospective jurors, and that nothing in such examination pointed toward any prior offense of defendant and that any suspicion of reference to such prior offense was wholly due to cross-examination of a juror made by the defendant.

ID.—EVIDENCE—ADMISSION OF FICTITIOUS DRAFT—PLACING IN BANK FOR COLLECTION UNNECESSARY—USELESS ACT.—The admission in evidence of the false and fictitious draft, without showing that it had been placed in bank for collection, was not error. It was unnecessary to do the vain and useless thing of placing a false and fictitious draft in a bank, which would not have been paid, and must have been returned by the bank.

ID.—EXHIBIT FOR COMPARISON OF HANDWRITING—GUILTY KNOWLEDGE OF DEFENDANT.—The admission in evidence of the exhibit of a letter for the purpose of comparison of the handwriting of one W. C. Watson, who had been introduced to the witness, who was engaged in selling encyclopedias, by the defendant as a purchaser, and who signed a written order therefor in the presence of the defendant, who received a commission for such purchase, the letter stating that said Watson declined to receive the encyclopedia, was proper for the purpose specified, and as tending to show guilty knowledge on the part of defendant.

ID.—REQUESTED INSTRUCTION AS TO NONEXISTENCE OF MAKER OF DRAFT—PROOF BEYOND REASONABLE DOUBT—PROPER REFUSAL.—A requested instruction that "the nonexistence of the individual H. C. Watson mentioned in the information . . . is one of the material issues involved in the case," and that "the nonexistence of said H. C. Watson must be proved beyond and to the exclusion of all reasonable doubt and to a moral certainty, and if there be any reasonable doubt as to whether or not there was in existence anywhere in the world such individual" on the date specified, "you must resolve that doubt in favor of the defendant, and find a verdict of not guilty," was properly refused.

ID.—DEGREE OF PROOF REQUIRED.—The prosecution was not required to prove, nor were the jury bound to believe beyond a reasonable doubt, that there was no such person in the world as H. C. Watson at the time the writing was signed. It was only necessary to show to a common certainty that there was no such person in existence in the vicinity of, and connected with, the particular acts charged in the place and county where jurisdiction accrued.

ID.—MISTAKE IN INITIALS OF NAME IN INSTRUCTION.—An evident mistake in the initials of the name of W. C. Watson, with whom defendant was connected in the encyclopedia transaction, in referring to the same by the court in an instruction as "H. C. Watson," which is made evident by what follows in the instruction, which would lead the jury to believe such reference, will not be considered as intended, or that the court was charging them, as matter of fact, that the writer of the draft was the same W. C. Watson referred to as giving the order for the encyclopedia.

ID.—INSTRUCTIONS CORRECT AS A WHOLE—MISTAKE IN INITIAL NOT GROUND FOR REVERSAL.—Where the instructions, as a whole, fairly and fully instructed the jury as to the questions of law bearing upon the issues before them, the court will not, for imaginary errors, or errors in regard to getting one initial wrong in an instruction, or in some other part of the record, reverse a case that appears to have been fairly tried.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco, and from an order denying a new trial. M. T. Dooling, Judge Presiding.

The facts are stated in the opinion of the court.

Burton Jackson Wyman, for Appellant.

U. S. Webb, Attorney General, for Respondent.

COOPER, P. J.—The defendant was found guilty of uttering and passing a fictitious instrument in writing for the payment of money, and sentenced to a term of three years in the state prison. He prosecutes this appeal from the judgment and the order denying his motion for a new trial.

The information states that the defendant is accused of feloniously uttering and passing, on the twentieth day of May, 1909, at the city and county of San Francisco, a fictitious instrument in writing for the payment of money, with intent to defraud one Aaron Jacobs, which fictitious instrument in

writing is stated to have been "then and there in the words and figures following, to wit:

" 'San Francisco, Cal., May 20th, 1909.

" '$25.00    At sight pay to the order of W. F. Gordon twenty-five no/100 dollars Value received, and charge the same to account of H. C. Watson.

" 'To Geo. W. Harrington, No. 212 Fifth street, San Diego, Cal.                              H. C. WATSON.

" 'No protest.    Tear this off before presenting.'

"Indorsed as follows: 'W. F. Gordon.' "

The information further charges a prior conviction of a felony, to wit, embezzlement, by a judgment of the superior court given and made on or about the thirty-first day of December, 1900.

Defendant made a motion to set aside the information upon the grounds that prior to the filing thereof the defendant had not been legally committed by a magistrate for the prior offense charged in the information, and that he was committed under the name of William F. Gordon, while the information charges him under the name of W. F. Gordon.

His first contention is that the court erred in denying his motion.    If there were otherwise any merit in the motion, it is sufficient to say that counsel has failed to call our attention to any evidence in the record as to the commitment made by the magistrate or its contents, or even the name under which the defendant was committed by the magistrate, and upon inspection we have failed to find any such evidence.    We must therefore presume in favor of the record that the district attorney performed his duty.    That the information is founded upon the commitment as made by the magistrate.    Not only is this so as matter of law, but we find by the record that when the information was read to the defendant, he admitted his true name to be W. F. Gordon, and before sentence the district attorney withdrew the charge of a prior conviction.

The information is said to be so fatal that the demurrer to it should have been sustained.    The argument is made that after the first charging part of the information, and after setting forth a copy of the instrument, it states that "whereas in truth and in fact there was no such individual as H. C. Watson then or there in existence," and it is contended that the words "then or there" are indefinite, and may have dif-

ferent meanings. The criticism is highly hypercritical. The information charges in the portion preceding the quoted clause that the instrument was false and fictitious. The statement that there was no such person "then" in existence is very comprehensive, and certainly if there was no such person in existence on the twentieth day of May, 1909, there was no such person "there" in the city and county of San Francisco. The information was sufficient to enable the defendant or any person of common understanding to know what was intended, and it sets forth the acts charged with such degree of certainty as to enable the court to pronounce judgment upon conviction.

There was no error committed by the court in allowing the district attorney to ask of prospective jurors the questions pointed out in appellant's brief as to the jurors being personally acquainted with certain persons therein named. The juror Lemmon was asked by the district attorney if he knew one Mr. Tompkins, who used to be the warden at San Quentin, and also if he knew a man named Dan Sullivan, who was in some way connected with the county clerk's office. The juror replied that he did not know either of them. The juror Blanchfield, in answer to a question by the district attorney, said he knew Dan Sullivan. The principal complaint is made as to the examination of the juror Rulfs. In answer to a question by the district attorney in direct examination, Rulfs testified that he did not know Dan Sullivan, but that he did know one A. Jacobs. In cross-examination of the juror by defendant's counsel, it was shown that the juror had read some account of the matter in the newspapers; that he remembered "about a prisoner over there getting acquainted with the warden's wife, something like that; that is all I remember about it." This is said by defendant's counsel to have reference to the fact that the defendant had before been in San Quentin for a prior offense. It is sufficient to say that we cannot determine from the record what prisoner the juror referred to. We cannot presume that the reference was to this defendant; and even if the answer raised a suspicion that the prisoner referred to was the defendant, the matter was elicited in answer to questions asked by defendant's own counsel in cross-examination. There was no motion to strike

out, and the juror further stated that he was not in any way prejudiced by what he had read.

The admission of the written instrument in evidence without showing that it had been placed in a bank for collection was not error, nor was it necessary to have the draft sent through a bank for collection. If the draft was false and fictitious as alleged in the information, it would not have been paid, and would have been returned by the bank. Hence it was not necessary to do a vain and useless thing.

It is stated that the court committed error of the most prejudicial character in admitting in evidence over defendant's objection a document marked ''People's Exhibit B.'' It appears that the exhibit was a letter, and was offered and admitted in evidence merely for the purpose of the ''physical appearance of the paper and the handwriting,'' and evidently for the purpose of comparison. Prior to the time the letter was offered one Riggs had been called as a witness for the prosecution, and testified that about April 10th of 1909, the defendant came to his place of business with a man claiming to be W. C. Watson, whom defendant introduced to the witness as W. C. Watson; that the person purporting to be W. C. Watson signed a written order to the witness for an encyclopedia that the witness appears to have been agent for, and that the order was signed in the presence of the witness ''W. C. Watson, 103 Natoma street.'' The witness Riggs was further examined, and identified a paper marked ''People's Exhibit A'' (which appears to be the instrument described in the information). The witness testified that he received the letter ''Exhibit B'' by mail on the twelfth day of April, 1909; that it had been in his possession ever since. The letter ''Exhibit B'' was a request to Riggs not to deliver the encyclopedia, as the writer of the letter would not receive it, and was signed ''W. C. Watson.'' The witness further testified that he compared the signature of the letter with the signature on the written order that he saw signed in the defendant's presence by the man purporting to be W. C. Watson, and that they appeared to be the same. Now, the only object of admitting the letter in evidence on the testimony of Riggs was for the purpose of the physical appearance of the letter and the handwriting for comparison. The court did not err in admitting it for the purposes named. The

facts preceding it, to wit, that the defendant had gone with the party W. C. Watson to the place of business of Riggs and introduced him to Riggs, and that an order was then signed by said party, W. C. Watson, for an encyclopedia, on which defendant received a commission from Riggs; that the said Watson never took or paid for the encyclopedia, tend at least in some degree to show guilty knowledge on the part of defendant. The witness Riggs having seen the purported Watson sign his name to the order for the encyclopedia, and having received in due course of mail a letter countermanding the order so signed "W. C. Watson," stated that he had compared the signature to the letter with the signature to the order, and that they appeared very much alike. The code provides (Code Civ. Proc., sec. 1943): "The handwriting of a person may be proved by anyone who believes it to be his and who has seen him write or has seen writings purporting to be his on which he has acted or been charged, and who has thus acquired a knowledge of his handwriting." The witness Riggs had seen the man who claimed to be W. C. Watson write, and had acted upon the writing so made by the man purporting to be said W. C. Watson, and the effect of his testimony is that he believed the letter to be in the same handwriting. While the evidence was not as convincing as in many cases, we cannot say, as matter of law, that it was not sufficient to prove to the satisfaction of the trial judge that the letter was written by the same man who wrote the order for the encyclopedia.

It is claimed that the court erred in refusing the defendant's requested instruction as follows: "The nonexistence of the individual H. C. Watson mentioned in the information, like all the other essential elements which go to make the offense for which this defendant is being tried, is one of the material issues involved in the case. The nonexistence of the said H. C. Watson must be proved by the prosecution beyond and to the exclusion of all reasonable doubt, and to a moral certainty, and if there be any reasonable doubt in your minds as to whether or not there was in existence anywhere in the world such an individual as H. C. Watson on the twentieth day of May, 1909, you must resolve that doubt in favor of the defendant, and find a verdict of not guilty."

The instruction was properly refused. The prosecution certainly was not required to prove, nor were the jury required to believe, beyond a reasonable doubt, that there was no such person in the world as H. C. Watson at the time the writing was signed.

It was only necessary to show to a common certainty that there was no such person in existence in the vicinity of, and connected with, the particular acts charged in the place and county where jurisdiction accrued. (*People* v. *Eppinger,* 105 Cal. 36, [38 Pac. 538]; *People* v. *Terrill,* 133 Cal. 120, [65 Pac. 303].) If the proposition contended for in the instruction be the law, it would be impossible in any case to prove beyond a reasonable doubt that there was no such particular person in the world.

The instruction of the court as to evidence covering another transaction between defendant and H. C. Watson and the witness Riggs was evidently an inadvertence as to the use of the initials "H. C." instead of "W. C." This is plain from what follows, wherein the jury are told that that was offered as "tending to show a connection between the defendant and said H. C. Watson, whom the people claim to be the maker of the draft in question." The jury evidently understood that the court referred to the transaction where the order for the encyclopedia was signed by the man purporting to be "W. C. Watson." We do not think the court intended to lead the jury to believe, nor could the jury have believed from the language used by the court, that the court was charging them, as a matter of fact, that the writer of the draft was the same W. C. Watson referred to by Riggs as giving the order for the encyclopedia.

We have examined the instructions as a whole, and we think that they fairly and fully instructed the jury as to the questions of law bearing upon the issues before them. It is not for imaginary errors, or errors in regard to getting one initial wrong in an instruction, or in some other part of the record, that the court will reverse a case that appears to have been fairly tried; and in regard to other errors which are claimed to have occurred in rulings on testimony, we have examined them, and we do not find any of sufficient importance to justify a reversal of the case.

The judgment and order are affirmed.

Kerrigan, J., and Hall, J., concurred.