[No. 10570.   Department Two.   December 30, 1912.]

THE STATE OF WASHINGTON, *Respondent*, v. DREWRY ·M. PEEPLES, *Appellant*.[1]

FORGERY — UTTERING — GUILTY   KNOWLEDGE — EVIDENCE — SUFFI-
CIENCY.  In a prosecution for forgery, there was sufficient evidence that defendant had a guilty knowledge of the spurious character of the papers, a note and mortgage, and participated in their utterance, where it appears that he took the papers to be executed by a spurious grantor, made affidavit that he knew the family to aid in closing the loan, aided in cashing the checks, retaining commissions, and denied acquaintance with one of the guilty parties whom he had known for a long time.

WITNESSES—CROSS-EXAMINATION—CRIMINAL   LAW—EVIDENCE   OF
OTHER ACTS—ADMISSIBILITY.  In a prosecution for forgery, where accused had sworn in his own behalf and detailed a state of facts favorable to himself, stating that he relied on the statements of one H. and that his desk had been rifled and papers taken away, it is proper on cross-examination, as testing his credit and impeaching his testimony, to ask if he and H. had not been engaged in passing off other spurious papers on the public, and if his confederates had not rifled his desk in order to do away with the papers.

CRIMINAL   LAW—TRIAL—CROSS-EXAMINATION   OF   DEFENDANT—
SCOPE.  Where accused offers himself as a witness, he submits himself to cross-examination to impair his credit, the same as any other witness.

[1]Reported in 129 Pac. 108.

CRIMINAL LAW—TRIAL—ARGUMENT TO JURY—MISCONDUCT OF COUN-
SEL. It is not misconduct for a prosecuting attorney to address ar-
gumentative remarks to the jury if they are free from expressions
of individual opinion as to the defendant's guilt independent of the
testimony in the case.

APPEAL—PRESERVATION OF GROUNDS—EXCEPTIONS TO INSTRUCTIONS
—MANNER AND TIME OF TAKING. Exceptions to instructions and to
the refusal to give instructions may not be merely filed, but must be
called to the attention of the judge and noted in the minutes as
required by Rem. & Bal. Code, § 384, although they may be taken at
any time before the hearing of a motion for a new trial.

EVIDENCE—DOCUMENTARY EVIDENCE—LOST PAPERS—COPIES—IDEN-
TIFICATION—SUFFICIENCY. The loss of an original affidavit is suffi-
ciently shown to admit evidence of a copy, which several witnesses
testified was a true copy, where it appears that the original was
filed as an exhibit at a former trial and officials in whose custody
it should be testified that search had been made for it and it could
not be found.

Appeal from a judgment of the superior court for King
county, Ronald, J., entered March 9, 1912, upon a trial and
conviction of forgery. Affirmed.

*Chas. W. Fouts*, for appellant.

*John F. Murphy, Hugh M. Caldwell*, and *H. B. Butler*,
for respondent.

ELLIS, J.—The defendant was charged by information
with the commission of the crime of forgery in the first
degree, by knowingly uttering a forged mortgage. He was
tried and convicted, and appealed to this court. On that
appeal the judgment of conviction was reversed because of an
erroneous instruction, to the effect that the fact of forgery is
a circumstance from which guilty knowledge is presumed
unless rebutted. *State v. Peeples*, 65 Wash. 673, 118 Pac.
906. In due course he was again tried and found guilty as
charged. His motion for a new trial was overruled, judgment
was pronounced, and sentence imposed. He has again ap-
pealed.

The first two assignments of error are general in their

nature, being based upon the court's action in denying a new trial and imposing sentence. It is inferentially argued that the evidence was insufficient to support the verdict. The constituents of the crime charged and the things necessary to its proof are, (1) the spurious character of the instrument, (2) its utterance by the appellant, and (3) his guilty knowledge of its spurious nature. As sustaining the first two of these elements, the evidence was overwhelming. It was shown beyond question that the mortgage was a forgery and the appellant admitted his participation in its utterance. The evidence conclusively showed, that the real owner of the property mortgaged was Martha B. Barnes; that her husband was W. H. T. Barnes; that they resided at Blaine, Whatcom county, Washington, were not in Portland when the spurious mortgage was there executed, and knew nothing of the mortgage till after it was made and the money paid out upon it.

The sole debatable fact upon the evidence was as to the appellant's guilty knowledge of the forgery. Such knowledge may be proven, like any other fact, by circumstantial evidence. The mortgage, the forgery of which is charged, purported to have been executed by Martha B. Barnes and W. H. T. Barnes, husband and wife, before a notary at Portland, Oregon. The appellant testified that in May, 1910, one D. A. Hatfield, whom he had known for a long time, well and favorably, brought to the office of the Washington Abstract Company, where appellant was then employed, a man and two women, none of whom the appellant had ever seen before; that Hatfield introduced the man as Mr. Barnes, one of the women as Mrs. Barnes, his wife, and the other, a young woman as Miss Barnes, the man's daughter; that they inquired the price of an abstract of title to the property which was afterwards covered by the alleged spurious mortgage; that about a week later he met the man Barnes on the street, and Barnes then introduced to him a Mr. Arlington, whom appellant had never seen before, as Barnes' brother-

in-law; that appellant next met the man Barnes about July
20, 1910, in appellant's office in the Melhorn building · in
Seattle, where appellant was then engaged in the real estate
and loan business; that he brought with him the abstract of
title to the property in question, and wanted appellant to
secure a loan of $5,000 upon the property to clear up de-
linquent taxes and special assessments against it; that ap-
pellant undertook the commission, and during the month of
August, opened negotiations to that end with one Hugh A.
Goodfellow.   The evidence further showed that a loan was
finally arranged for, and a note and mortgage prepared in
Goodfellow's office, which the appellant took away with him
to have executed by Martha B. Barnes, in whose name the
property stood of record, and W. H. T. Barnes, her husband;
that a few days afterwards the appellant returned with the
papers executed, stating that he had sent them to Portland
for that purpose; that one J. R. Seaborn, a client of Good-
fellow's who furnished the money for the loan, was notified,
and the three went to the office of Seaborn's attorney, who had
examined the abstract and who then examined the papers.
The attorney testified that, in examining the title, he noted
that one Mary E. Barnes had held the title in 1893, and
he required some proof that she was then unmarried; that
the appellant produced an affidavit to the effect that appel-
lant knew Mary E. Barnes and that she was an unmarried
woman when she acquired the property in 1893.   The affidavit
was sworn to by the appellant before Hugh A. Goodfellow as
notary public.   The attorney, Goodfellow and Seaborn all
testified that the appellant then stated that he had known the
Barnes family for a long time and that he knew that Miss
Barnes had never been married.   The failure to produce
the original being accounted for, a copy of this affidavit was
admitted in evidence over the appellant's objections.   The
copy was as follows:

"D. M. Peeples being first duly sworn on oath deposes and
says: that he knew and was acquainted with Mary E. Barnes

the grantee in that certain deed dated the 5th day of August, 1893, in which James Barnes Jr. was grantor conveying all of block thirty-five in Woodland Addition to Salmon Bay City; that said Mary E. Barnes was unmarried at the time she acquired the above named property and during all the time she held said property remained unmarried.

"In witness whereof I have hereunto set my hand this 3rd day of September 1910.          (Signed) D. M. Peeples. Subscribed and sworn before me this 3rd day of September, 1910.

(Signed) Hugh A. Goodfellow. Notary Public in and for the State of Washington, residing at Seattle."

The loan was closed, the papers delivered, and something near $3,400 of the proceeds applied in payment of taxes and special assessments against the property. Of the balance, $936.13 was turned over to the appellant by Goodfellow's check payable to the order of Martha B. Barnes, and about $500 was held back pending the clearing up of an apparent judgment lien upon the property. This occurred about September 3, 1910. Finally, the parties being satisfied that the judgment was not a lien upon the property, Goodfellow gave the appellant his check payable to the order of Martha B. Barnes for $432.01, dated September 12, 1910, that being the balance of the loan after deducting $250 as Goodfellows' commission. The appellant testified that he sent each of these checks to Barnes at Portland as soon as received; that about September 6, the man Arlington appeared at his office with the first check, and a letter from Barnes asking the appellant to aid Arlington in cashing the check, which he did, retaining from the proceeds his own commission of $100, and about $35, the cost of the abstract, turning the balance over to Arlington; that about September 13 or 14 a young man, whom appellant had never seen before or since, appeared at appellant's office with the other check and a letter from Barnes introducing him as Mr. Clark, a nephew of Barnes, and asking the appellant to aid the young man in

cashing the check, which he did, turning the money over to the man Clark.

On cross-examination the appellant admitted that he went to Portland on September 7, on other business, and while there saw and talked with Hatfield. It also appeared that, about the time of these transactions, one W. M. Whitney, an attorney, was investigating another transaction in which Hatfield and Arlington were implicated and with which the appellant had some connection. The appellant testified that Whitney called upon him and he had furnished Whitney the name and address of Hatfield. Whitney testified that on September 7 or 8, he called on the appellant to secure information as to the two men, and that the appellant said that he did not know Arlington at all and at first said that he did not know who Hatfield was, but finally said maybe he did know him and that he would try to find out where he was and would notify Whitney, but that he never did in fact furnish Hatfield's address. The appellant also testified that, pending the closing of the loan, he received several letters from Barnes from Portland, one of which he introduced in evidence. C. S. Harley, a banker, who qualified as a handwriting expert, compared this letter with another paper in Hatfield's handwriting, and testified that in his opinion both papers had been written by the same person. We think there are ample circumstances disclosed by this evidence from which the jury might reasonably find that the appellant had guilty knowledge of the forgery. He testified that he had known Hatfield for a long time, but if Whitney is believed he denied any acquaintance with him, though within a day or two of that time he had seen and talked with him in Portland. He testified that he had never seen any of the spurious Barnes family prior to May, 1910, but made an affidavit, in order to secure the loan, that he knew that Mary E. Barnes was an unmarried woman in 1893. He produced a letter purporting to come from Barnes in Portland at a time when the evidence shows Hatfield was in Portland, and this letter was pro-

nounced by the expert as in Hatfield's handwriting. He admitted that throughout this period he was in correspondence with Hatfield also, though at that time denying his acquaintance. Without further particularizing, we are satisfied that no one can read the entire record without reaching the conclusion that the appellant was aware of the spurious character of the papers from their inception, and knowingly participated in their utterance. There was evidence tending to establish every element of the crime charged. The trial court having denied the motion for a new trial, we cannot interfere unless there was prejudicial error in the admission of evidence or in the giving or refusal to give instructions. *State v. Bailey*, 67 Wash. 336, 121 Pac. 821, and cases there cited.

On cross-examination of the appellant, the following questions were permitted:

"Q. Isn't is a fact, Mr. Peeples, that you and Mr. Hatfield and others were engaged in passing off these spurious papers on the public, and that you were engaged in this transaction in the same way? . . . Q. Isn't it a fact you executed a fictitious deed from John Paulson to Dave Arlington on July 12, 1909?"

The appellant contends that this constituted error in that it tended to prejudice the jury by connecting him with the commission of other offenses. The appellant had testified to the effect that he felt warranted in relying upon Hatfield in the matter of the introduction of the Barnes family. The first question was competent on cross-examination for the purpose of testing his right to so rely. He had also testified that he had never met Arlington until the spurious Barnes introduced him on the street. The second question was competent cross-examination upon this point. The appellant also testified that, after his arrest, his desk had been rifled and papers in connection with the transaction taken away. On cross-examination he was asked if confederates of his had not taken the letters to prevent the officers from getting them. All of these questions had a direct relation to the

things to which the appellant had testified in chief. When a defendant as a witness in his own behalf details a state of facts favorable to himself, he necessarily subjects himself to cross-examination relative to those facts. His credit as a witness may be tested and his testimony impeached in the same manner and to the same extent as that of any other witness. Rem. & Bal. Code, § 2148; *State v. Duncan*, 7 Wash. 336, 35 Pac. 117, 38 Am. St. 888; *State v. Armstrong*, 29 Wash. 57, 69 Pac. 392; *State v. Hill*, 45 Wash. 694, 89 Pac. 160.

"Under our constitution a defendant in a criminal case can not be compelled to give evidence against himself, but when he voluntarily offers himself as a witness in his own behalf, and so testifies, he is 'subject to all the rules of law relating to cross-examinations of other witnesses.' Bal. Code, § 6941; Pierce's Code, § 2165. And, in case the accused testifies in his own behalf, he is subject to cross-examination to impair his credit *as a witness* to the same extent as any other witness is (Abbott, Trial Brief [Criminal Causes], § 396, and cases cited); and, generally may be impeached in the same manner as any other witnesses (*State v. Duncan*, 7 Wash. 336, 35 Pac. 117, 38 Am. St. Rep. 888), 'by reputation as evidence of character, by cross-examination to character, by conviction of crime, and the like;' 'for otherwise, if he were a false witness, the customary methods of exposing this would not be available, and the investigation of truth and the punishment of crime would be defeated.' " *State v. Melvern*, 32 Wash. 7, 26, 72 Pac. 489, 495.

In *State v. Cottrell*, 56 Wash. 543, 106 Pac. 179, the cross-examination which was held improper related to a matter wholly disconnected from the defendant's testimony in chief. The distinction from the case before us is obvious.

In arguing the case to the jury, counsel for the state said: "Why should this man Hatfield be writing to this man if they were not carrying on the same nefarious practices?" And again: "Don't you suppose a gang working like these people are going to have a few confederates working with them?" Exceptions were taken and these remarks are assigned as misconduct necessitating a reversal. The connec-

tion in which these remarks were made is not preserved in the record, but even dissociated from context, they evince an argumentative character and are not such expressions of individual opinion of the appellant's guilt, independent of the testimony of the case, as to constitute misconduct. *State v. Armstrong*, 37 Wash. 51, 79 Pac. 490; *State v. Marion,* 68 Wash. 675, 124 Pac. 125; *People v. Hess*, 85 Mich. 128, 48 N. W. 181; *People v. Welch*, 80 Mich. 616, 45 N. W. 482. While intemperate assertions of opinion not based upon any evidence will never be tolerated, it is none the less in the interest of a sound public policy that prosecuting officers be permitted a reasonable latitude in argumentative deduction from the evidence. That is all that these remarks upon their face purport. They do not constitute prejudicial error.

Error is also assigned upon the failure of the court to give certain instructions which it is claimed were requested by the appellant. The trial was completed on February 28, 1912. A motion for a new trial was filed on March 1, 1912, which was denied on March 9, 1912. On February 27, 1912, the proposed instructions, the failure to give which is complained of, were filed. On March 1, 1912, exceptions to the failure to give them were filed. There is nothing in the record to indicate that either these proposed instructions or these exceptions were ever called to the attention of the trial court. This is also true of the exceptions to the instructions given by the court. They are not referred to nor included in the statement of facts certified to by the trial judge, but merely appear in the transcript among the other files. This constituted neither a sufficient request, nor sufficient exceptions to its refusal, nor sufficient exceptions to the instructions given. The amendatory act of 1909 (Rem. & Bal. Code, § 339), relates merely to the time, not the manner, of taking exceptions. The manner of taking exceptions is still determinable by the old law (Rem. & Bal. Code, §384). Though exceptions may now be taken at any time before the

hearing of the motion for a new trial so that the trial judge may have an opportunity to correct, in his ruling upon that motion, any error he may have made in his instructions, thus saving the necessity for review by appeal, they must still be stated to the trial judge and by him noted in the minutes of the court or embodied in the record by the stenographer taking the record. Otherwise they would not serve their intended purpose. They would be an idle formality. This same question was logically discussed and the above view conclusively adopted by this court in *Coffey v. Seattle Elec. Co.*, 59 Wash. 686, 109 Pac. 202. The exceptions are not sufficient to permit a review of the court's action either in refusing to give or in the giving of instructions, save one to the giving of which exception was taken at the time and noted in the record by the stenographer.

The jury requested an instruction upon the purported copy of the affidavit above quoted. The appellant objected to any instruction, except that the jury be instructed to disregard the exhibit on the ground that no proper foundation had been laid for its introduction. It is not claimed that the instruction as given was not proper if the exhibit was properly admitted. We think it was. It was shown that the original affidavit was admitted in evidence at the former trial, and that search had been made in the papers in that case in the supreme court and that it could not be found. It appeared that the affidavit was referred to in the certificate of the trial judge in that case as "Exhibit E." The transcript clerk in the county clerk's office of King county testified that, in such a case, he always sent up all exhibits referred to in the judge's certificate if he could find them, and that if any could not be found he notified the attorneys in the particular case. The vault clerk in the office of the county clerk for King county testified that he had searched in the files of the original case for the original affidavit, and that he could not find it. He also testified that none of the exhibits in that case were returned to him after

being sent up to the supreme court. The notary before whom the original affidavit was sworn to testified that the purported copy offered stated exactly what the original did, and, though he admitted that he did not actually compare the two, that he read the offered paper over with the original a number of times. The deputy prosecuting attorney who conducted the former trial for the state testified that the paper offered was in substance the same as the original; that he had examined the original several times, introduced it in evidence on the former trial, and read it to the jury; that the original contained the very allegations found in the paper offered and in his judgment the paper was a copy of the original affidavit. The attorney who examined the abstract for the purpose of the loan and on whose demand the original affidavit was made testified that in his opinion the paper offered was a copy of that affidavit. We think this evidence sufficiently excused the failure to produce the original affidavit and was sufficient to admit the paper produced as proof of the contents of the original. It follows that there was no error either in admitting the paper in evidence or in giving the instruction, which was to the effect that, if the jury found that the defendant made an affidavit and that the paper in evidence was a true copy of that affidavit, then it was as much evidence of what was said or sworn to as the original itself would have been.

Notwithstanding the failure to properly take exceptions, we have carefully examined the instructions given in the light of the evidence, and we are satisfied that they fairly presented the law as applied thereto. We find in the record no prejudicial error.

The judgment is affirmed.

MOUNT, C. J., FULLERTON, MORRIS, and MAIN, JJ., concur.