J. PAUL MATHIES v. STATE.

No. A-8725.   Dec. 7, 1934.
(38 Pac. [2d] 588.)

See, also, 55 Okla. Cr. 14, 28 Pac. (2d) 594.

Babb, Bennett & Babb and White & White, for plaintiff in error.

J. Berry King, Atty. Gen., F. M. Dudley, Asst. Atty. Gen., and A. G. Windham, Co. Atty., for the State.

CHAPPELL, J. Plaintiff in error, hereinafter referred to as defendant, was convicted in the district court of LeFlore county of the offense of willfully, knowingly, intentionally, fraudulently, unlawfully, and feloniously approving a certain unlawful, fraudulent, and unauthorized claim against LeFlore county, and his punishment fixed by the jury at imprisonment in the state penitentiary for a period of five years.

It appears from the record that the defendant was a member of the board of county commissioners of LeFlore county from 1925 to 1932, and during four years of that time was chairman of the board; that claim No. 519 for the fiscal year 1929-1930 was prepared in the name of L. A. Harper as claimant and filed with the county clerk and duly allowed by the board of county commissioners on the recommendation of defendant, and that a warrant was issued by the clerk and delivered to defendant, payable out of the funds allotted to defendant's commission district No. 2 for road work purporting to have been performed in that district under defendant's supervision; that the claim and warrant were both missing from the files of

the county clerk, together with a large number of other claims and warrants involving other alleged unlawful transactions of defendant; that the evidence of the state disclosed 149 other warrants issued apparently according to the same system employed in allowance of the L. A. Harper claim, and the issuance of warrants thereon; that 69 of the warrants so issued were delivered to defendant; that 30 of these claims were filed by defendant; that in 68 of these cases neither the claim nor the warrant could be found, but the record indicated that the warrants had been delivered to defendant; that 17 of the warrants introduced indicated indorsement of the payee's name by defendant; that defendant frequently requested the county clerk to leave the door unlocked between the commissioner's office and the clerk's office to make it convenient for him to work at night, and that defendant at all times had access to these purported unlawful and fraudulent records.

To sustain its allegation that the claim was fraudulent and unlawful, the state called 40 witnesses residing in commissioner's district No. 2, who testified they had resided in that district from 10 to 30 years, and that many of them had been engaged in road work under defendant during the time defendant was commissioner; that none of them had ever seen, heard of, or worked with L. A. Harper; and that as far as they knew no such person had ever done any road work in LeFlore county, and particularly any road work in commissioners' district No. 2. Wherever these witnesses testified to knowing of any of the other 149 claims presented, those persons were immediately subpoenaed and brought into court, and all those who could be found testified that they had never done any work in LeFlore county and had never filed any claim and had received no part of the proceeds of these warrants.

The defendant did not take the witness stand.

Defendant called Woodson Mathies, his brother, to prove that L. A. Harper was a real person and that after he had indorsed the warrant the witness cashed it at his bank.

On cross-examination, however, this witness said he did not see L. A. Harper indorse the warrant, nor did he cash it for him; that he had no personal knowledge of the matter and was merely testifying from what the bank records purported to disclose.

The state had previously used this witness to show that the state's exhibit 358, being a warrant included in the list of other offenses, for the sum of $427, had been cashed at his bank; that the warrant was presented and indorsed by defendant and the witness gave him $427 in cash.

To sustain the charge, the state must prove that the defendant in his official capacity approved the L. A. Harper claim knowing the same to be fraudulent and unlawful. Proof of these facts by direct evidence would usually be impossible.

After the state had shown that defendant was county commissioner, that he presented the claim and vouched for it, and that it was approved and allowed by the board of county commissioners while he was chairman, and that he received the warrant from the clerk, the state then showed by numerous long-time residents of that section of the country that no such person existed or was known in that community, and that defendant in the same manner had handled 149 other claims, some of which were fictitious and fraudulent, and others for real persons but fraudulent. This evidence is sufficient to support the verdict of the jury and the case must be affirmed unless the errors complained of by defendant are sufficient to require a reversal.

Defendant's second contention is that there is a fatal variance between the allegations of the information and the proof offered.

The information charges in substance that defendant was the duly elected, qualified, and acting commissioner of LeFlore county, and in his official capacity did willfully, knowingly, intentionally, fraudulently, unlawfully, and feloniously approve and allow a certain unlawful, fraudulent, and unauthorized claim against the said LeFlore county, to wit, claim 519 of the fiscal year 1929-1930, said claim being against the road fund for labor performed by one L. A. Harper on the county highway of said LeFlore county; that said L. A. Harper did not perform the work and labor charged for in said claim, but he, the said J. Paul Mathies, well knowing said claim to be unlawful, unauthorized, and fraudulent, as aforesaid, did unlawfully, intentionally, knowingly, and feloniously approve and allow the same; defendant's particular contention being that the state was bound to prove the direct allegation that L. A. Harper had not performed the work and labor, and that it was insufficient to show that he was a fictitious person, and that said proof constituted a fatal variance between the allegations and the proof.

To support its claim, the state showed the claim was filed by the defendant and on his recommendation it was allowed, and that the warrant was delivered to him, all of which indicated that L. A. Harper was a fictitious person and had not performed the labor for which the claim was filed. To further support its case, the state then introduced proof by other men who had worked for years in that road district, and by others who had lived there from 10 to 30 years, that no such person had performed any work to their knowledge, or had been seen or was known in that community, the contention of the state be-

ing that when they showed this set of circumstances and further that such an individual was unknown in the community and that he was a fictitious person, that they had produced the proof required by law to support the charge; that if L. A. Harper was a fictitious person, as a matter of fact and law he had not performed the labor, and if defendant knowing these facts had caused the warrant to be issued and received it himself, he was guilty as charged. If L. A. Harper was a fictitious person, it necessarily follows that the claim charged in the information was unlawful for the reason that said L .A. Harper had not performed the work or labor collected for.

In Nichols "Applied Evidence," vol. 2, p. 2138, it is said:

"In order to prove that there was no such person as had been supposed or pretended to be indicated by a name, a witness may testify to his search and inquiries made for the purpose of finding such person among persons most likely to know him if there were such a person, and also as to the result."

"To convict of forging a draft signed by a fictitious person, it was not necessary to prove that there was no such person in existence at the time the writing was signed, it being sufficient to show to a common certainty that there was no such person in the vicinity of and connected with the particular acts charged in the place and county where jurisdiction accrued."

"Guilty knowledge of the spurious character of an instrument uttered by the accused, may, like any other fact, be proved by circumstantial evidence."

To the same effect are: State of Louisiana v. Hahn, 38 La. Ann. 169; People v. Eppinger, 105 Cal. 36, 38 Pac. 538; People v. Sanders, 114 Cal. 216, 46 Pac. 153; People v. Gordon, 13 Cal. App. 678, 110 Pac. 469; State v. Peeples, 71 Wash. 451, 129 Pac. 108; Miner v. State, 27 Ariz. 248,

232 Pac. 875; People v. Roche, 74 Cal. App. 556, 241 Pac. 279.

In 3 Greenleaf on Evidence, § 111, it is said:

"This was prima facie proof that Miller was not a real person until the prisoner should produce him or give other proof of his existence."

When the charge and the state's proof are considered with the authorities cited, it is evident that there was no variance between the charge and the proof.

It is next contended the court erred in admitting evidence of other similar transactions.

This court has had this question before it in many cases, the latest of which was Quinn v. State, 54 Okla. Cr. 179, 16 Pac. (2d) 591, where the court laid down the general rule with its exceptions and cited many authorities of this and other courts to sustain its position on that question.

The state's proof was intended to show a plan or scheme on the part of the defendant whereby periodically each year he would file these claims and cash these warrants. The court instructed the jury that this evidence was received only for the purpose of showing plan or scheme, and that if the jury failed to find or had a reasonable doubt that the defendant was guilty as charged, that they must acquit him notwithstanding these other acts. The evidence was clearly admissible and all defendant's rights were preserved by the instructions of the court.

It is next contended the court erred in permitting the state to introduce 149 other claims, after it had made its preliminary proof and introduced in evidence the claim alleged to be fraudulent.

In Waller v. State, 19 Okla. Cr. 329, 199 Pac. 224, this court said:

"Where evidence admitted is competent, ordinarily the order in which it is admitted will not constitute reversible error."

In Smith v. State, 36 Okla. Cr. 9, 251 Pac. 507, this court said:

"Evidence received out of order will not work a reversal, where, if introduced in order, the result would probably have been the same."

A careful examination of the record reveals no abuse of discretion on the part of the trial court in the introduction of the state's evidence.

Some complaint is made concerning the giving and refusal of instructions, but they are without any substantial merit.

It was contended by the defendant that it was the custom of the board of county commissioners of that county for each member to have charge of the funds allotted to his particular district; that he filed the claims and received the warrants, sometimes cashing them and delivering the proceeds to those who performed the labor; and that the acts complained of constituted at most only a legal irregularity.

This court cannot put its approval on any such system. It is wholly unauthorized by law, and, if followed to its logical end, can result only in wrongdoing and fraud upon the part of those who engage in it. The defendant during all the years he was on the board of county commissioners continually and systematically under this system robbed the taxpayers of LeFlore county through manipulation of false and fraudulent claims. The verdict of

guilty is fully supported by the evidence, and the punishment administered is reasonable under all the circumstances.

No reversible error appearing, the cause is, affirmed.

EDWARDS, P. J., and DAVENPORT, J., concur.