375 P.2d 536

**STATE of Idaho, Plaintiff-Respondent,**

**v.**

**Earl William BOOTON, also known as William Earl Booton, Defendant-Appellant.**

**No. 9159.**

Supreme Court of Idaho.

Oct. 19, 1962.

53

Frank L. Benson, Atty. Gen., William E. Swope, Asst. Atty. Gen., Boise, Hugh C. Maguire, Jr., Pros. Atty., P. A. McDermott, Deputy Pros. Atty., Pocatello, for respondent.

Robert W. Bennett, Pocatello, for appellant.

**54**

McFADDEN, Justice.

Appellant Booton was charged by an information of passing and uttering a forged instrument with intent to defraud, knowing it was false and forged, under the provisions of I.C. § 18–3601. He was tried and convicted of the charge, and appeals from the judgment of conviction and the order denying his motion for new trial.

Appellant asserts that the court erred in entering judgment of conviction, contending insufficiency of the evidence to support the verdict and judgment, and par-ticularly insufficiency, to establish: that he had passed and uttered the check knowingly, willfully and feloniously; that he intended to defraud the recipient of the check; that he had knowledge the check was false and forged. He contends also that the verdict was against the law, and was based on inflammatory and prejudicial evidence as to his character, contained in a statement voluntarily made and not in response to questions propounded by the state.

The check involved, dated September 30, 1961, was payable to cash in the amount of $132.00 and signed $\frac{\text{"Jim King}}{\text{"Holland Furnace Co."}}$ On Friday, September 29, 1961, during the hours between 11 A.M., and 5:30 P.M., appellant Booton, an employee of the Holland Furnace Company, had been in a bar in Pocatello where the check was cashed, in the company of two fellow employees and two women. This bar was owned by one Raymond Fields, who accepted and cashed the check in question. Fields testified that all that day Booton had claimed he was going to bring in a check in an amount of over one hundred dollars to be cashed. Fields had known Booton about a month and that he worked for the Holland Furnace Company. Booton claims to have previously cashed other checks in this bar. About five o'clock in the afternoon, Booton endorsed and presented the check in ques-

tion to Fields to be cashed. Fields deduct-ed an amount Booton owed him on a bar bill, and paid the balance to Booton. Before the bank closed Friday evening Fields examined the check; he stated "I knew there was something wrong with the check. So I gave it to one of my extra bartenders to take up to the bank, and he took it to the bank, and he said that was a forged check and couldn't cash it, and brought it back." He also testified that before the check was cashed that Booton stated that the wife of Mr. King, manager of the furnace company, wrote the check and gave it to him.

After receiving the check back from the bank, Fields turned the check over to the police department. Later that same night the appellant was apprehended. Mr. Moldenhauer, a detective of the Pocatello police department, stated that he had a conversation with the appellant in the early morning hours of Saturday, September 30th, following Booton's arrest. He testified:

"The conversation was why he passed the check. He stated that King owed him a lot more money than that, and I asked him if he wrote the check, and he stated that he got—I'm sorry. I can't remember just exactly how he placed that. Something to the effect that he did not write the check, but he got the check, or something of that sort. I'm not exactly sure how he phrased the question."

In a subsequent conversation in October, with the appellant, Mr. Moldenhauer testified that:

"The conversation was why he wrote the check, and he stated he did not write the check. He stated that John Morrison wrote the check, and I asked him at that time why on the night he was arrested he did not mention John Morrison to me, and he said—as I remember, he was too confused on the night that he couldn't think, or something like that. However, he wanted us then to pick up John Morrison, and we could not locate him, and he didn't know where he would be."

Mr. James King, a witness for the State, testified that he was the manager of the Holland Furnace Company, and that the signature on the check in question was not his signature; that the check was not written by an authorized person; that it wasn't signed by his wife, and that the signature was not that of his wife.

Appellant's explanation of his possession of the check was to the effect that John Morrison, a fellow employee, while in the bar with the two girls discussed how another person was to be bailed out of jail, and they were wondering if the appellant was going out that night with them. Appellant stated he only had about

**56**

$25.00, and that if he paid his bar bill he would have nothing "to go out with". He stated "So about that time John Morrison told me, he said—well, he said 'If you pay him what you owe him out of this check. Then he gave me the check. He said, 'You would have something to go out with.' "

■ Essential elements of proof of the crime of uttering a forged instrument as defined by I.C. § 18–3601 are: 1. The forged character of the instrument; 2. Its utterance as true and genuine by the accused; 3. His guilty knowledge of its spurious character; and 4. The accused's intent to defraud another. See also: State v. Peeples, 71 Wash. 451, 129 P. 108; People v. Chapman, 156 Cal.App.2d 151, 319 P.2d 8; People v. Pounds, 168 Cal.App.2d 756, 336 P.2d 219.

■ The proof is uncontroverted that the check itself was forged and that the defendant presented the check to Fields. Passing or uttering a check consists of presenting it for payment. State v. Hobl, 108 Kan. 261, 194 P. 921. The allegation that the defendant "knowingly, willfully, unlawfully, intentionally and feloniously, etc., did pass and utter" the check in question raises an issue of fact for resolution by the jury; The allegation of "knowingly" and "intentionally" has reference to the general criminal knowledge and intent, and not to the specific intent and knowledge requisite for commission of the crime as charged. As to such general criminal knowledge, wilfulness, unlawfulness and intent, the jury can infer them from the facts and circumstances surrounding the commission of the crime itself. I.C. §§ 18–114, 18–115. State v. Johnson, 74 Idaho 269, 261 P.2d 638. The word "intent" as so used has been construed to mean not an intent to commit a crime, but is merely the intent knowingly to perform the interdicted act. State v. Parish, 79 Idaho 75, 310 P.2d 1082. State v. Johnson, supra.

■ Appellant's act of passing the check to Fields and his receiving credit on the bill and the balance of the money is sufficient evidence from which the jury could find that Booton presented the check as true and genuine. The jury could infer specific knowledge by the appellant of the forged nature of the check from its utterance and the surrounding circumstances. McGhee v. State, 183 Tenn. 20, 189 S.W.2d 826, 164 A.L.R. 617. Such knowledge may be proven by either direct or circumstantial evidence, State v. Peeples, 71 Wash. 451, 129 P. 108. Evidence showing the forged nature of the instrument and its possession and utterance by the appellant is sufficient to warrant an inference of this specific knowledge, in the absence

of a satisfactory explanation of its acquisition and possession. 164 A.L.R. 617, 622, 683; 23 Am.Jur. 705, Forgery § 62. While appellant attempted an explanation of his possession of the instrument, to the effect that one Morrison gave him the check, yet, when first arrested, the defendant never mentioned this, and the question of reasonableness of such explanation was an issue for the jury. There was ample evidence from which the jury could find against the appellant on the reasonableness of this explanation.

As to the evidence pertaining to the specific intent the defendant had to defraud the recipient of the check, this was a question of fact for the jury. From the fact of uttering and passing the check itself, and from the receipt of the proceeds of the check, the jury could properly find the specific intent to defraud. "An intent to injure or defraud need not be proven by positive and direct evidence. It may be inferred by the jury from the evidence before them." McGee v. State, 20 Ala.App. 221, 101 So. 321.

As has so oft been repeated, the jury are the exclusive judges of the facts, and the credibility of the witnesses. When there is competent and substantial evidence before that body, this court cannot set aside a verdict. There is no merit to appellant's assignment of error directed to the insufficiency of the evidence.

Appellant next assigns error if the trial court in failing to declare a mistrial when Officer Moldenhauer introduced evidence of other crimes and the past criminal record of the appellant. This contention is based on the following portion of the testimony adduced on direct examination of this witness;

"Q. Just a minute. Where was the conversation, and who was present?

"A. (Witness Moldenhauer) 'Still at the police station. Myself and Mr. Booton present. He told me that if we would let him go he would get the money from his father back East and pay the check off; that all we were trying to do was put him back in the penitentiary. We had no—

"Mr. Armstrong (defense attorney). I object to that your honor.

"The Court. On what grounds, Mr. Armstrong?

"Mr. Armstrong. No reference has been made to Mr. Booton's past or whether he has been in the penitentiary or not.

"The Court. The answer is already in the record.

"Mr. Armstrong.

"Mr. Armstrong. I move to strike it.

"The Court. The answer will be stricken and your objection sustained."

The second time any reference was made to the appellant's past record, the same witness stated, relating to the conversation he had with the appellant.

"Well, Mr. Booton was more or less hysterical—in a way hysterical, he was crying, and then he would pound on the desk, and he said, 'All you want to do is—' I'm sorry. This was the conversation he was telling me, and he says, 'You just want to put me back.' He says, 'You don't care what I do. You don't care anything about me,' he says."

No objection or motion to strike was made by appellant at this time. Then relating to a later conversation with the appellant the witness stated that:

"The conversation then was his reluctance to cooperate on the charge, and at that time we mentioned that he might prosecute on a persistent violator against him."

An objection was sustained by the court and the answer stricken. The trial court in his instructions to the jury advised them:

"You are further instructed as a matter of law that you must not in your deliberations in this case consider any evidence ordered stricken from the record by the Court."

Later during the trial, the appellant took the stand, and by examination of his own counsel his whole previous criminal record was presented to the jury. In view of the actions of the Court in striking the testimony objected to, the court's instruction to the jury and the balance of the record of the trial, the court did not err in refusing to grant appellant's motion for new trial or declaring a mistrial.

Judgment affirmed.

SMITH, C. J., KNUDSON, J., and MARTIN, District Judge, concur.

McQUADE, Justice (dissenting).

Underlying our principles of criminal law is the basic premise that a defendant shall have a fair and impartial trial. Prejudice and bias are to be prohibited and expunged to accomplish the fundamental concept that a defendant shall not be convicted upon evidence which does not prove or disprove the essential elements of the crime with which he is charged. It is elementary to say that a jury may be prejudiced by a defendant's background of former convictions. To this end there have been many rules safeguarding the trial of an accused which prevent the introduction of former convictions excepting under certain circumstances.

In this trial the police officer in three separate statements referred to the defend-

:ant's criminal record. These utterances were made under the guise that a conversation had been had with the defendant and were portions thereof. They do not go to proof of the charge against the defendant and where objected to were properly stricken by the court.

It is said in 22A C.J.S. Criminal Law § 734(2), p. 1082:

"* * *, or where he follows the denial with an admission of certain facts, the statement and the reply thereto may be received and considered against him to the extent that he admits the truth of the charge, the admission being evidence, and the statement not being direct evidence but admissible only in connection with the reply."

In 22A C.J.S. Criminal Law § 735, p. 1085, it is said:

" * * * nor should the state be permitted to introduce portions of the conversation which do not relate to the offense charged."

In denying a new trial the court permitted prejudicial statements to influence the jury. Being inflammatory and prejudicial in nature it was reversible error to continue with the trial of the case.

To this extent I dissent from the majority opinion.