**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 35557**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2009 Opinion No. 76 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: December 2, 2009 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| REBECCA R. ALLEN, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Thomas F. Neville, District Judge.

Judgment of conviction for forgery, affirmed.

Molly J. Huskey, State Appellate Public Defender; Eric D. Fredericksen, Deputy Appellate Public Defender, Boise, for appellant. Eric D. Fredericksen argued.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent. Kenneth K. Jorgensen argued.

_____

GUTIERREZ, Judge

Rebecca R. Allen appeals from her judgment of conviction entered upon a jury verdict finding her guilty of forgery. We affirm.

**I.**

**FACTS AND PROCEDURE**

The state's evidence at trial established that Allen entered Moneytree, a business offering check-cashing services, and presented to the manager a $4,900 check made out to Allen. The manager testified that Allen requested that it be cashed. After Allen gave the check to the manager through the window, the manager attempted to verify it. Noticing irregularities on the face of the check, the manager asked Allen several questions and then informed her that the check was fraudulent. The manager alerted the police.

When contacted by the police, Allen first said the check had been sent to her by a friend, but later admitted that she had received the check after responding to an e-mail and becoming

1

involved in a "Nigerian check scam." She also indicated that she suspected the check was fraudulent. After changing her story several times, Allen admitted to the officers that she had gone to Moneytree to cash the check and signed a statement admitting the same.

At the conclusion of trial, the jury returned a verdict of guilty on the charge of forgery, Idaho Code § 18-3601. Allen now appeals.

## II.

## ANALYSIS

Allen contends that there was insufficient evidence to convict her of felony forgery. Specifically, she argues that the state failed to prove beyond a reasonable doubt that she passed or attempted to pass a fraudulent document, because she did not both relinquish possession and indorse the fictitious financial document--which, she points out, are dual requirements to negotiate a financial instrument.

While framed as a sufficiency of the evidence argument, Allen's contention requires us to construe the forgery statute. Idaho Code § 18-3601, under which Allen was charged, states, in relevant part:

> Every person who, with the intent to defraud another . . . passes, or attempts to pass, as true and genuine any of the above named false, altered, forged or counterfeited matters . . . knowing the same to be false, altered, forged, or counterfeited, with intent to prejudice, damage, or defraud any person . . . is guilty of forgery.

While recognizing that our Supreme Court has held that "passing" a check simply "consists of presenting it for payment," *State v. Booton*, 85 Idaho 51, 56, 375 P.2d 536, 538 (1962), Allen argues that the Uniform Commercial Code (UCC) provisions regarding negotiable instruments (which include checks) are applicable to determining whether a forged document has been passed under I.C. § 18-3601. Specifically, she points to the UCC definition of negotiation and transfer of instruments, I.C. § 28-3-201, adopted by amendment in 1993 as being "what is required to present a check for payment." As set forth in that section, "[e]xcept for negotiation by a remitter, if an instrument is payable to an identified person, negotiation requires transfer of possession of the instrument *and* its indorsement by the holder. . . ." (Emphasis added).[1] Thus, Allen reasons, because the UCC requires that if an instrument is payable to an identified person,

---

[1] "Indorsement" is defined as "a signature . . . made on an instrument. . . ." Idaho Code § 28-3-204(1).

2

negotiation of that instrument requires the transfer of possession and indorsement by the holder, she could not have passed or attempted to pass the check because she did not indorse the document.

This Court exercises free review over the application and construction of statutes. *State v. Reyes*, 139 Idaho 502, 505, 80 P.3d 1103, 1106 (Ct. App. 2003). Where the language of a statute is plain and unambiguous, this Court must give effect to the statute as written, without engaging in statutory construction. *State v. Rhode*, 133 Idaho 459, 462, 988 P.2d 685, 688 (1999); *State v. Burnight*, 132 Idaho 654, 659, 978 P.2d 214, 219 (1999); *State v. Escobar*, 134 Idaho 387, 389, 3 P.3d 65, 67 (Ct. App. 2000). The language of the statute is to be given its plain, obvious, and rational meaning. *Burnight*, 132 Idaho at 659, 978 P.2d at 219. If the language is clear and unambiguous, there is no occasion for the court to resort to legislative history or rules of statutory interpretation. *Escobar*, 134 Idaho at 389, 3 P.3d at 67. Constructions of a statute that would lead to an absurd result are disfavored. *State v. Doe*, 140 Idaho 271, 275, 92 P.3d 521, 525 (2004); *State v. Yager*, 139 Idaho 680, 690, 85 P.3d 656, 666 (2004).

Allen's attempt to import the UCC requirements for negotiation of a negotiable instrument into the criminal forgery statute to require indorsement of the document to find that a defendant "passed" it is without merit. Allen cites no authority for the proposition that a statute applicable to the requirements of commercial transactions controls the elements of a criminal statute, trumping the plain language of that statute as interpreted by our Supreme Court in *Booton*, or for the proposition that the criminal statute was automatically amended by the adoption of the UCC definition of negotiation. Had the legislature intended the criminal forgery statute to mirror the UCC definition of negotiation, it could have explicitly amended the statute to indicate as much--we will not read into the statute such a deviation from its plain, unambiguous language.

Thus, since there is no basis to rely on the UCC to interpret the meaning of "pass" as contained in the forgery statute, we rely on the common law. As mentioned above, our Supreme Court specifically held in *Booten*, 85 Idaho at 56, 375 P.2d at 538, that "passing" of a check simply "consists of presenting it for payment." This comports with the applicable legal dictionary definition of "pass" which is "[t]o publish, transfer, or circulate (a thing, often a forgery)." BLACK'S LAW DICTIONARY 1145 (7th ed. 1999). Notably absent from these

definitions is an indorsement requirement--all that is necessary is presentment of the document with the intent that it be paid.[2]

Also, as indicated above, constructions of a statute that would lead to an absurd result are disfavored. Here, under Allen's interpretation of the statute, she could not be found guilty of forgery, even if Moneytree had cashed the check, because she had not indorsed it. It would be absurd to allow a defendant to avoid criminal liability on the ground that a clerk inattentively cashed a check without the requisite signature. Thus, adhering to the definition of "passing" or attempting to "pass" as elucidated in *Booton*, we conclude that Allen's action of presenting the check for payment at the Moneytree counter is sufficient to find that she "passed" the check in contravention of I.C. § 18-3601.[3]

## III.

## CONCLUSION

The correct interpretation of the criminal forgery statute does not require a defendant to have indorsed the document to be found to have "passed" it in contravention of the statute. Rather, all that is required is that it be presented for payment. Accordingly, Allen's action of handing the check to the teller at Moneytree with the expectation of receiving cash in return was

---

[2] Even if we were to rely on the Uniform Commercial Code to discern the meaning of "pass" in the forgery statute, in light of *Booten* the more appropriate term to rely on would be "presentment" as defined in I.C. § 28-3-501:

> a demand made by or on behalf of a person entitled to enforce an instrument (i) to pay the instrument made to the drawee or a party obliged to pay the instrument or, in the case of a note or accepted draft payable at a bank, to the bank, or (ii) to accept a draft made to the drawee.

Thus, even if the UCC were to apply to the forgery statute, there still would not be an indorsement requirement.

[3] In her reply brief, Allen argues that, in fact, *Booton* "wholly supports" her position that a check must be indorsed before a party "passes, or attempts to pass" the instrument, because in that case, the Supreme Court noted that Booton "endorsed and presented the check in question to . . . be cashed." Her reliance on this fact, however, is misplaced. The Court made no indication that its conclusion that Booton "passed" the check in contravention of the forgery statute relied in any manner on the fact that he had indorsed it. Rather, the reference is merely part of a complete narrative of Booton's actions in a case where his knowledge that the check was forged was at issue.

sufficient evidence that she acted in violation of I.C. § 18-3601.  Allen's judgment of conviction for forgery is affirmed.

Chief Judge LANSING and Judge GRATTON **CONCUR**.