# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket Nos. 34193/34818/37619

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | **2011 Opinion No. 61** |
| Plaintiff-Respondent, | ) | |
| | ) | **Filed: October 19, 2011** |
| v. | ) | |
| | ) | **Stephen W. Kenyon, Clerk** |
| VALENTINO HERRERA, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Cassia County. Hon. John M. Melanson, District Judge.

Judgment of conviction and order of restitution for battery on a peace officer, affirmed.

Nevin, Benjamin, McKay & Bartlett LLP, Boise, for appellant. Robyn A. Fyffe argued.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent. Kenneth K. Jorgensen argued.

---

LANSING, Judge

Valentino Herrera was convicted of battery on a peace officer, with a sentence enhancement for being a persistent violator of the law. Herrera raises numerous claims of error, including a contention that the State's evidence did not show the alleged victim had been a peace officer.

## I.

## FACTS AND PROCEDURE

The following events were described in the State's evidence at Herrera's trial. In June of 2006, Herrera and Alan Garrett, who was a former Cassia County sheriff's deputy and court bailiff, were both incarcerated in Cassia County for unrelated criminal charges. While Garrett was wiping down tables after breakfast, he moved Herrera's coffee cup. This angered Herrera, who commented to another inmate that Garrett had previously "cost [him] five years" and "he

1

put me in prison." Garrett tried to calm Herrera down but was unsuccessful. Herrera then threw hot coffee in Garrett's face, hit him in the face with the coffee mug, punched Garrett in the face and gouged his eye. During the altercation, Herrera called Garrett a "narc cop."

The State charged Herrera with battery, Idaho Code § 18-903, enhanced from a misdemeanor to a felony pursuant to former I.C. § 18-915(d) (2001), on the allegation that the battery was committed because of Garrett's former status as a "peace officer." The State later filed an amended information seeking a persistent violator sentence enhancement.

Prior to trial, Herrera filed a motion to dismiss the charge, contending that Garrett had not been a peace officer, but instead had been a bailiff, when Herrera's animosity towards Garrett arose, and therefore the charging enhancement could not apply. The district court denied the motion, concluding that one could be both a peace officer and a bailiff.

On the morning of trial, Herrera filed a motion to dismiss the amended information on the basis that the district court had never arraigned him on the amended information's allegation of the persistent violator enhancement. In response, the district court arraigned Herrera, effectively denying the motion.

After the jury returned a guilty verdict on the charged offense, Herrera's counsel admitted that Herrera was a persistent violator by stipulating that Herrera had thrice previously been convicted of felonies. However, on Herrera's post-trial motion, the district court set aside the persistent violator admission because the court had not asked Herrera personally whether he wanted to plead guilty to the sentencing enhancement. At a new trial on the persistent violator allegation, Herrera was again found to have at least two prior felony convictions. The district court imposed a term of imprisonment of thirty years with ten years fixed.

Herrera appeals.

## II.

## ANALYSIS

### A.     Motion to Dismiss

Prior to trial, Herrera filed a motion to dismiss the charge. He asserted that Garrett's former service was as a bailiff and not as a peace officer even though he also had been a deputy sheriff, and therefore the provisions of Idaho Code § 18-915(d), enhancing the offense to a felony, could not apply. The district court denied the motion, holding that the two terms were not mutually exclusive and that one could be both a peace officer and a bailiff. The district court

2

said: "I believe it's possible that in some situations in some counties bailiffs might not be peace officers, but I think based upon the facts in this case the alleged victim Mr. Garrett was." Herrera claims error.

Herrera's argument is that because Idaho Code § 18-915 refers to peace officers and bailiffs in the disjunctive, as a matter of law the two offices are mutually exclusive and a person cannot be both, either simultaneously or sequentially. This argument carries no logic and therefore demonstrates no error in the denial of his motion.

**B.      Sufficiency of the Evidence at Trial**

Herrera next contends that the State did not introduce sufficient trial evidence to prove that Garrett was a former peace officer. Appellate review of a challenge to the sufficiency of the evidence is limited. A jury verdict will not be set aside if it is supported by substantial and competent evidence upon which a rational trier of fact could find all elements of the crime beyond a reasonable doubt. *State v. Thomas*, 133 Idaho 172, 174, 983 P.2d 245, 247 (Ct. App. 1999); *State v. Haley*, 129 Idaho 333, 334, 924 P.2d 234, 235 (Ct. App. 1996). We may not substitute our opinion for that of the jury as to the credibility of witnesses or the weight to be given to their testimony. *State v. Gonzalez*, 134 Idaho 907, 909, 12 P.3d 382, 384 (Ct. App. 2000). The facts, and inferences to be drawn from those facts, are construed in favor of upholding the jury's verdict. *State v. Herrera-Brito*, 131 Idaho 383, 385, 957 P.2d 1099, 1101 (Ct. App. 1998); *State v. Peite*, 122 Idaho 809, 823, 839 P.2d 1223, 1237 (Ct. App. 1992).

Herrera's argument here involves the interplay between three statutes, the first of which is I.C. § 18-915, which, at the time of Herrera's alleged offense, provided:

> **Assault or battery upon certain personnel -- Punishment. --** Any person who commits a crime provided for in this chapter against or upon a justice, judge, magistrate, prosecuting attorney, public defender, *peace officer*, *bailiff* . . . and the perpetrator knows or has reason to know of the victim's status, the punishment shall be as follows:
> (a) For committing battery with intent to commit a serious felony the punishment shall be imprisonment in the state prison not to exceed twenty-five (25) years.
> (b) For committing any other crime in this chapter the punishment shall be doubled that provided in the respective section, except as provided in subsections (c) and (d) of this section.
> . . . .
> (d) For committing a violation of the provisions of section 18–903, Idaho Code . . . against the person of a *peace officer*, sheriff or police officer *because of the victim's former or present official status*, the offense shall be a felony

punishable by imprisonment in a correctional facility for a period of not more than five (5) years, and said sentence shall be served consecutively to any sentence being currently served.

(emphasis added). The other two statutes are not in the criminal code but are part of Title 19, Chapter 51 of the Idaho Code, which establishes a training program for Idaho law enforcement officers. One of these statutes, I.C. § 19-5101(d), defines "peace officer" as used in that chapter to mean, in relevant part, "any employee of a police or law enforcement agency which is a part of or administered by the state or any political subdivision thereof and whose duties include and primarily consist of the prevention and detection of crime and the enforcement of penal, traffic or highway laws of this state or any political subdivision." The final statute is I.C. § 19-5109(3)[1] which provides in part:

> No peace officer shall have or exercise any power granted by any statute of this state to peace officers unless such person shall have been certified by the council within one (1) year of the date upon which such person commenced employment as a peace officer, except in cases where the council, for good cause and in writing, has granted additional time to complete such training.

Herrera contends that because trial evidence showed that Garrett was first sworn into office as a deputy on October 2, 1989, and was not certified by the Peace Officer Standards and Training Council (POST) until more than one year later on October 24, 1990, and because the State failed to prove that Garrett was granted additional time from the POST Council, by application of Idaho Code § 19-5109(3) the State necessarily failed to prove that Garrett ever had "official status" as a peace officer. Therefore, Herrera reasons, an element of the offense under I.C. § 18-915(d) was not satisfied. On this theory, Herrera asks this Court to reverse his conviction for insufficient evidence.

Herrera's argument presents an issue of statutory interpretation. The objective of statutory interpretation is to give effect to legislative intent. *State v. Yzaguirre*, 144 Idaho 471, 475, 163 P.3d 1183, 1187 (2007). In this task, we are "guided by general principles of statutory construction and a common sense appraisal of what the legislature intended." *Lawless v. Davis,* 98 Idaho 175, 176, 560 P.2d 497, 498 (1977); *State v. Paciorek*, 137 Idaho 629, 632, 51 P.3d

---

[1] In 1990, when Garrett was POST certified, the subsection was codified as I.C. § 19-5109(c).

443, 446 (Ct. App. 2002). Constructions of a statute that would yield an absurd result are disfavored. *State v. Allen*, 148 Idaho 578, 580, 225 P.3d 1173, 1175 (Ct. App. 2009). Therefore, courts are free to consider the effect and consequence of differing possible interpretations. *State v. Yager*, 139 Idaho 680, 690, 85 P.3d 656, 666 (2004).

Herrera's argument is untenable. It inherently requires an interpretation of Section 19-5109(3) to mean that if a person is not POST certified within one year of commencing employment as a peace officer, that person can *never* thereafter have "official status" as a peace officer or be "duly authorized" to be a peace officer; and even if the individual is later POST certified and works as a peace officer for many years, he or she *never* becomes one. This could not have been the legislature's intent, and such an interpretation would lead to an absurd result. We construe this statutory provision to mean that if a peace officer is not POST certified within one year of commencing employment and no extension is granted, the statute precludes the individual from having or exercising any statutory authority as a peace officer *until he or she is certified*.

Here, the State presented evidence that Garrett was hired by the Cassia County Sheriff's Department in 1989 and worked for that law enforcement agency for over ten years. He sometimes worked as a bailiff at the Cassia County Courthouse, but at other times worked as a peace officer, conducting patrol, making arrests, and signing warrant applications. Garrett wore a uniform and badge and carried a gun. His supervisor testified that Garrett was authorized to enforce the laws of the state of Idaho and was considered a deputy sheriff. Garrett was POST certified on October 24, 1990. Hence, Garrett was an "official" peace officer both for one year after he commenced employment as a peace officer, *see State v. Wengren*, 126 Idaho 662, 666, 889 P.2d 96, 100 (Ct. App. 1995), and after his POST certification on October 24, 1990. While Garrett may not have been an "official" peace officer between October 2 and October 24, 1990, that is of no import to this case. The trial evidence was sufficient to show that Garrett was a former peace officer.[2]

---

[2] Our interpretation of Idaho Code § 19-5109(3) also disposes of Herrera's argument that the court erred in denying his motion for a new trial, which was predicated upon "newly discovered evidence" that the POST Council had not granted Garrett an extension of time to complete his POST training.

Herrera next asserts that the evidence was insufficient to show that he battered Garrett "because of" Garrett's former status as a peace officer, as also required by I.C. § 18-915(d). Rather, Herrera contends, the evidence indicates that he committed the battery because of Garrett's former work as a court bailiff. He asserts that "the state theorized that Mr. Herrera believed Mr. Garrett sent him away for five years because (in 1995) he signed a [criminal] complaint [against Herrera], in his capacity as a bailiff." This claim of error has no merit for two reasons. First, contrary to Herrera's implication, no evidence was presented that Garrett signed the complaint against Herrera "in his capacity as a bailiff." Second, it was not necessary for the State to prove that the precipitating motive behind Herrera's attack was that Garrett signed a complaint. The State needed only to prove that the battery was committed "because of" Garrett's former official status as a peace officer. Here, trial testimony indicated that Herrera called Garrett a "narc cop" during the battery. This is sufficient evidence to support the verdict.

## C.    Jury Instructions

Herrera also contends that the district court erred by not instructing the jury on the definition of "bailiff." He cites no authority in support of the novel proposition that a court must define in jury instructions a word that was not used anywhere else in the instructions or in the charging documents. Further, Herrera did not request such an instruction, and he makes no claim that the failure to do so constituted fundamental error. Issues that have not been preserved by objection in the trial court will not be reviewed on appeal absent fundamental error. *Mintun v. State*, 144 Idaho 656, 661, 168 P.3d 40, 45 (Ct. App. 2007). Therefore, we will not further address the issue.

## D.    Motion for Continuance

At a pretrial hearing, Herrera's counsel said that he had other court commitments that might conflict with Herrera's January 3, 2007, trial date. Eleven days later, and six days prior to the trial, defense counsel filed a motion for a continuance of the trial. The attorney, who had been appointed six months earlier, before Herrera's preliminary hearing, did not contend that he was unprepared for trial but that he had two other conflicting hearings scheduled. He also informed the court that Herrera would not waive his right to a speedy trial. In response to the court's inquiries, counsel revealed that his conflicts were pretrial hearings in misdemeanor cases. The district court and the parties all were of the view that Herrera's statutory right to a speedy trial, *see* I.C. § 19-3501, required that the trial commence by January 17, 2007. The district court

6

denied the request for a continuance out of concern about Herrera's speedy trial right and because defense counsel's schedule conflicts did not take precedence over Herrera's trial date. On the morning of the first day of trial, defense counsel told the district court that his conflicts had been resolved.

Herrera posits error in the denial of a continuance. He contends for the first time on appeal that the district court's speedy trial concern was unfounded because the first judge assigned to the case had disqualified himself on October 24, 2006, and pursuant to Idaho Criminal Rule 25(a)(10), Herrera's six-month speedy trial time began to run anew as of that date. This argument is meritless because Rule 25(a)(10) applies only to disqualifications without cause under Idaho Criminal Rule 25(a), whereas the judge initially assigned to Herrera's case had disqualified himself for cause. Therefore, the district court did not err in considering the effect that a continuance would have on Herrera's right to a speedy trial.

Moreover, Herrera has shown no prejudice from the denial of a continuance. The refusal of a defendant's request for a continuance is reversible error only if his substantial rights were prejudiced. *State v. Thorngren*, 149 Idaho 729, 736, 240 P.3d 575, 582 (2010); *State v. Averett*, 142 Idaho 879, 889, 136 P.3d 350, 360 (Ct. App. 2006). At no time did defense counsel assert that he was unprepared for trial or that additional time would aid the defense. Herrera's current claim of prejudice is based solely on statements made by a replacement defense attorney one and one-half years later during a hearing on a motion for a new trial where, unsupported by any evidence, the new attorney speculated that if the continuance had been allowed, Herrera's former attorney might have been better prepared for trial and may have better informed Herrera "of his options as far as a jury trial." Because Herrera has failed to demonstrate any change in evidence, trial tactics or defense presentation that would have occurred had a continuance been granted, he has not established prejudice from the denial of his motion. *See Thorngren*, 149 Idaho at 736-37, 240 P.3d at 582-83; *Averett*, 142 Idaho at 889, 136 P.3d at 360.

**E.      Motion to Dismiss for Failure to Arraign on Amended Information**

About three months before trial, the State filed an amended information requesting, for the first time, a persistent violator sentence enhancement pursuant to I.C. § 19-2514. On the morning of the first day of trial, Herrera filed a motion to dismiss the amended information because it had been improperly filed without leave of the district court, *see* Idaho Criminal Rule 7(e), and because the district court had not arraigned him on the amended charge. *See*

7

I.C.R. 10.  In response, the prosecutor admitted that Herrera had not been arraigned on the amended charge, but suggested that Herrera would not be prejudiced if the court allowed the amended information to be filed.  Herrera responded that "the only way to be sure that Mr. Herrera is aware of his rights is to, of course, have a motion to amend the complaint and then to actually advise Mr. Herrera of his rights as would be permitted--or would be done in any other arraignment."

The district court treated the prosecutor's statements as a motion to amend the information and granted it, finding no prejudice to Herrera.  The court also arraigned Herrera on the amended charge on the spot.  The district court thereby gave Herrera what he requested and, in so doing, effectively denied the motion.

On appeal, Herrera claims that this procedure denied him due process.  Herrera argues that it is error to fail to arraign a defendant, while largely ignoring the fact that he *was* arraigned.  The only claim of error he makes with regard to the actual arraignment is that the district court failed to inform him that he was "entitled to have at least twenty-four hours to consider his plea on the amended information" and that "this advice was required to make the arraignment meaningful."  Herrera relies upon Idaho Criminal Rule 10, but that rule does not say that a trial court must advise a defendant of such information.  Instead, the rule states:  "*If on the arraignment the defendant requires time to enter a plea*, the defendant must be allowed a reasonable time, not less than one (1) day, within which to answer the indictment or information."  (Emphasis added.)  Herrera did not indicate that he needed additional time to plead not guilty.  Herrera has shown no actual prejudice from the late arraignment or from any defect in the arraignment colloquy itself.  Therefore, he has shown no violation of Idaho Criminal Rule 10 and no deprivation of due process in the arraignment that was conducted.

Herrera also asserts that the district court erred by allowing the late filing of the amended information.  His appellate argument implies that until the day of trial, he was entirely unaware that the amended information containing a persistent violator allegation had been filed by the prosecutor without leave of court.  In the proceedings below, defense counsel never expressly said that he had not informed Herrera of the sentence enhancement allegation in the amended information that had been improperly filed months earlier.  Herrera nevertheless relies upon that implication, contending that the late notification deprived him of the opportunity to negotiate a plea bargain with awareness of the risk of an enhanced sentence.  Herrera cites no authority for

8

the proposition that he has a right to a plea offer or plea negotiations after notice that a persistent violator enhancement has been alleged.

Idaho Criminal Rule 7(e) authorizes the court to allow amendment of an information at any time before the prosecution rests "if no additional or different offense is charged and if substantial rights of the defendant are not prejudiced." The rule's reference to prejudice to substantial rights means prejudice to the defendant's ability to defend against the charge. *See State v. Severson*, 147 Idaho 694, 709-10, 215 P.3d 414, 429-30 (2009) (holding defendant not prejudiced by allowing the State to amend its indictment because he had "more than adequate time to prepare his defense"). *Cf. State v. Allen*, 145 Idaho 183, 185-86, 177 P.3d 397, 399-400 (Ct. App. 2008) (holding that reversal for late disclosure of a State's witness requires trial prejudice, and defendant's claim that he turned down an attractive plea offer because he thought the State could not prove its case without the witness does not demonstrate prejudice). Herrera has shown no trial prejudice resulting from the court granting leave to file the amended information on the first day of trial, nor can he inasmuch as he was granted a re-trial on the persistent violator allegation many months later.

Moreover, Herrera's claim that he had no opportunity to engage in plea negotiations while being aware of the persistent violator enhancement is disproven by his own statement at his first sentencing hearing on October 27, 2008, where he said:

> [W]hen I was first aware of the amended charges back in 2006 I wasn't given a lot of time to consider a deal offered by the State at that time. And it was--I mean, 30 minutes isn't a whole lot of time to give, you know, adequate consideration to the rest of your life. And that's exactly what the State was asking: We'll give you five years if you plead guilty now. We'll drop the persistent.

These statements establish that Herrera did, in fact, have an opportunity to engage in plea negotiations after learning that the State would file or had filed the persistent violator enhancement. Thus, the factual basis for his claim of prejudice is disproven by the record.

## F.      Prosecutorial Misconduct

Herrera next asserts as error three instances of alleged prosecutorial misconduct. The first is the prosecutor's statement during closing argument that "if the defendant has shown any

reasonable doubt it's your duty to convict, and that's what I'm asking you to do."[3]   Herrera objected, asserting that "the defendant has no burden to show any reasonable doubt."   The district court responded to defense counsel "that's in the nature of argument and you can certainly argue that if you wish."

It is prosecutorial misconduct to misrepresent the State's burden to prove an accused's guilt beyond a reasonable doubt. *State v. Phillips*, 144 Idaho 82, 86, 156 P.3d 583, 587 (Ct. App. 2007); *State v. Lovelass*, 133 Idaho 160, 168, 983 P.2d 233, 241 (Ct. App. 1999).   Therefore, to eliminate any possible jury confusion, the district court should have sustained the objection and cured the misstatement by admonishing the jury that the burden of proving the case beyond a reasonable doubt lies with the State.

Nevertheless, this error will not warrant relief on appeal if it was harmless.   The State bears the burden of persuading the appellate court "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained."   *State v. Perry*, 150 Idaho 209, 221, 245 P.3d 961, 973 (2010).   Here, the State has sustained that burden because the parties themselves later cured the prosecutor's misstatement.   First, in his closing argument defense counsel said:

> If there's one thing that needs to be clear, it's that the State of Idaho has the burden in this case.   Mr. Herrera does not have the burden of proving anything.   The State of Idaho has the burden of proof of not only proving that this crime was committed, but they also have the burden to prove beyond a reasonable doubt that self defense was not used by Mr. Herrera.   I want that to be crystal clear at this point.

Then in his rebuttal closing argument, the prosecutor told the jury:

> [Defense counsel is] certainly right that the State has the burden of proof. That's my job.   I don't disagree with that at all.   The defendant doesn't have to put on a single shred of evidence.   I have no problem with being required to prove a case beyond a reasonable doubt.

In light of the parties' clear agreement on the burden of proof, and a jury instruction in accord that had been given prior to the closing arguments, we are confident beyond a reasonable doubt that the prosecutor's misstatement had no effect on the verdict and was harmless.

---

[3]      As the State notes on appeal this statement, as it appears in the trial transcript, does not make sense.

Herrera argues, however, that the prosecutor's misstatement constitutes reversible error regardless of the absence of any identifiable prejudice. He refers to the holding of *Sullivan v. Louisiana*, 508 U.S. 275 (1993), where the United States Supreme Court held that a constitutionally defective reasonable doubt jury instruction is a structural defect that is not subject to harmless error analysis. Herrera argues that the prosecutor's statement here constituted an erroneous "instruction" on the burden of proof and thus qualifies as "structural error" requiring automatic reversal of his conviction. This argument is specious. An attorney's statement in closing argument is not, by any definition, a jury instruction.

Herrera next contends that the prosecutor committed misconduct in his closing argument by relying on testimony that he knew was not true. This issue concerns the number of felonies for which victim Garrett had been convicted. At Herrera's preliminary hearing, the prosecutor asked Garrett whether he had been "convicted of felony thefts and driving under the influence of alcohol?" Garrett answered: "Correct." At the subsequent trial, the prosecutor elicited testimony from Garrett that he was currently residing in the penitentiary on a sentence for felony driving under the influence. Neither the prosecutor nor defense counsel asked Garrett at trial whether he had any other felony convictions on his record. During closing argument, Herrera's trial counsel attacked Garrett's credibility, pointing out that he had been convicted of a felony and "put himself in prison." In rebuttal, the prosecutor responded by saying:

> [I]f [defense counsel] wants to look at people's pasts, *you've got a victim with one felony conviction and a defendant with three.*[4] *Who's more or less credible?* Yet I'm not sure we really need to get into that. Alan Garrett's testimony was corroborated by more than one witness.

Herrera contends that this argument was improper because, based on Garrett's preliminary hearing testimony, the prosecutor knew he had been convicted of more than one felony.

Defense counsel, who also had represented Herrera at the preliminary hearing, did not object to the prosecutor's statement that Garrett had only one felony conviction. Trial error ordinarily will not be addressed on appeal unless a timely objection was made in the trial court. *State v. Adams*, 147 Idaho 857, 861, 216 P.3d 146, 150 (Ct. App. 2009). This limitation "serves to induce the timely raising of claims and objections, which gives the [trial] court the opportunity to consider and resolve them." *Puckett v. United States*, 556 U.S. 129, ____ (2009), *Perry*, 150

---

[4]     At trial it was revealed that Herrera had three prior felony convictions.

11

Idaho at 224, 245 P.3d at 976. Because Herrera raises this claim of error for the first time on appeal, he must establish that it is reviewable as fundamental error.

In its recent opinion in *Perry*, 150 Idaho 209, 245 P.3d 961, the Idaho Supreme Court held that, in the absence of a timely objection in the trial court, relief will be afforded on appeal for an error in a criminal trial only if the defendant shows that it amounts to fundamental error under the following three-part test:

> (1) the defendant must demonstrate that one or more of the defendant's unwaived constitutional rights were violated; (2) the error must be clear or obvious, without the need for any additional information not contained in the appellate record, including information as to whether the failure to object was a tactical decision; and (3) the defendant must demonstrate that the error affected the defendant's substantial rights, meaning (in most instances) that it must have affected the outcome of the trial proceedings.

*Id.* at 226, 245 P.3d at 978 (footnote omitted). Thus, on a claim of fundamental error a defendant must first show that the alleged error "violates one or more of the defendant's unwaived constitutional rights" and that the error "plainly exists" in that it was plain, clear, or obvious. *Id.* at 228, 245 P.3d at 980. If the appellate record is insufficient to show clear error, "the matter would be better handled in post-conviction proceedings." *Id.* at 226, 245 P.3d at 978. If the alleged error satisfies the first two elements of the *Perry* test, the appellate court will review the error under the harmless error test, with the defendant bearing the burden of proving that there is a reasonable possibility that the error affected the outcome of the trial. *Id.* at 226, 228, 245 P.3d at 978, 980.

According to *Perry*, "Where a prosecutor attempts to secure a verdict on any factor other than the law as set forth in the jury instructions and the evidence admitted during trial, including reasonable inferences that may be drawn from that evidence, this impacts a defendant's Fourteenth Amendment right to a fair trial," and hence is reviewable as fundamental error. *Perry*, 150 Idaho at 227, 245 P.3d at 979; *State v. Jackson*, 151 Idaho 376, 381, 256 P.3d 784, 789 (Ct. App. 2011). That is not the circumstance here, however, for the prosecutor referred only to the evidence elicited at trial. Further, Herrera does not contend, and the record does not indicate, that the prosecutor elicited false trial testimony from Garrett. Garrett was asked, and he confirmed, that he was at time of trial incarcerated at the penitentiary for felony driving under the influence. What Herrera is now asserting is that the prosecutor committed misconduct by relying on this truthful testimony in his closing argument and indicating that Garrett had only

12

one felony conviction when, based upon the preliminary hearing testimony, the prosecutor knew that Garrett had at least one additional felony conviction.

Herrera's argument is flawed, for it is predicated on an assumption that the preliminary hearing testimony is more accurate than the trial testimony regarding the number of Garrett's felony convictions. Because Herrera did not cross-examine Garrett about any additional felonies nor object to the prosecutor's comment in closing argument, the number of felony convictions that Garrett had sustained is unknown. It is entirely possible, as the State posits, that after the preliminary hearing the parties realized that Garrett had only one felony conviction. It follows that this claim of prosecutorial misconduct does not satisfy the second prong of the *Perry* test for fundamental error because the claimed error is not clear or obvious. Additional information not contained in the appellate record is needed in order to determine whether the prosecutor's argument was inaccurate.

Finally, Herrera contends that the prosecutor committed misconduct at trial by asking him on cross-examination whether other witnesses had lied under oath. Herrera did not object. In *Perry*, our Supreme Court held that "where . . . the asserted error relates not to infringement upon a constitutional right, but to violation of a rule or statute . . . the 'fundamental error' doctrine is not invoked." *Id.* at 226, 245 P.3d at 978. A question calling for the opinion of one witness as to the truthfulness of another witness's testimony is generally inadmissible because it invades the province of the jury and does not "assist the trier of fact" as required by Idaho Rule of Evidence 702 or provide information "helpful . . . to the determination of fact in issue" as required by I.R.E. 701. *See Jackson*, 151 Idaho at 380, 256 P.3d at 788. It does not, however, constitute a constitutional violation. *Id.* Herrera's claim of error in the admission of the evidence does not implicate a constitutional right and therefore does not present an issue of fundamental error.

## G. Error in the Admission of Documentary Evidence at the Persistent Violator Trial

At Herrera's separate trial on the persistent violator sentence enhancement, the State alleged that he had three prior felony convictions. In addition to copies of the judgments of conviction for those offenses, the State also proffered a copy of a bench warrant in one of the cases and the criminal complaint in another. The State did so because the additional documents reflected Herrera's date of birth and social security number, while the judgments of conviction did not. The additional documents were therefore relied upon to establish that the judgments in

13

those cases referred to Herrera and not to another person of the same name. *See State v. Medrain*, 143 Idaho 329, 332, 144 P.3d 34, 37 (Ct. App. 2006). When the bench warrant and complaint were offered, defense counsel objected to them as creating "undue prejudice" because "it's more documents the jury's going to see claiming my client is a bad guy, a bad actor." The district court denied the objection (which was apparently invoking I.R.E. 403), concluding that the documents' probative value was not substantially outweighed by the danger of unfair prejudice.

On appeal, Herrera argues that the district court erred by not redacting from the documents largely unspecified "unfairly prejudicial" information before admitting them. For two reasons, this claim is meritless. First, Herrera did not preserve this claim of error because he did not ask the district court to redact any information from the documents, but instead sought their wholesale exclusion. *See State v. Cannady*, 137 Idaho 67, 72, 44 P.3d 1122, 1127 (2002) (an objection to the admission of a book did not preserve a separate objection to the defendant's handwritten notations in the margins).

Second, even if he had preserved his current complaint, the probative value of the identity evidence in the documents was very substantial while the danger of unfair prejudice, with respect to the only issue before the jury, was virtually non-existent. Evidence is not unfairly prejudicial simply because it is damaging to a defendant's case; it is unfairly prejudicial when it suggests decision on an improper basis. *State v. Pokorney*, 149 Idaho 459, 465, 235 P.3d 409, 415 (Ct. App. 2010); *State v. Floyd*, 125 Idaho 651, 654, 873 P.2d 905, 908 (Ct. App. 1994). When a jury must determine whether the defendant committed a criminal offense, unfairly prejudicial evidence of other misconduct may be excluded to reduce the possibility that the jury will find guilt based on a conclusion that the defendant is a person of criminal character or on a conclusion that because he had engaged in misconduct before, he likely did it again. *State v. Grist*, 147 Idaho 49, 52, 205 P.3d 1185, 1188 (2009); *State v. Wood*, 126 Idaho 241, 244-45, 880 P.2d 771, 774-75 (Ct. App. 1994). Here, in contrast, the only issue for the jury on the persistent violator allegation was whether Herrera had twice before been convicted of felonies. Necessarily, the jury would have to be made aware of "other misconduct" evidence--it would receive evidence that Herrera had been convicted of at least two felonies prior to the one for which he was convicted in this case. Herrera posits no logical reason why a jury would be more likely to conclude that he was the person referred to in the prior judgments of conviction because

14

of the disclosure that the person referred to therein was accused of violating probation or because of the underlying allegations in the complaint that initiated one of the prosecutions. We perceive no unfair prejudice to weigh against the probative value of these documents. The district court did not err by overruling Herrera's objection or by failing to sua sponte redact the documents.

## H.  Restitution

Herrera next asserts that the district court erred by ordering that he pay "restitution" to reimburse Cassia County for the expense of his presentence psychological evaluation because the statute cited in the order does not authorize restitution for the cost of such an evaluation. His claim of error will not be reviewed because he did not preserve it by objecting below. The fundamental error doctrine may not be invoked to raise a restitution issue for the first time on appeal because restitution proceedings are civil in nature. *State v. Mosqueda*, 150 Idaho 830, 834, 252 P.3d 563, 567 (Ct. App. 2010).[5]

## III.

## CONCLUSION

Herrera has shown no reversible error in the denial of his various motions, in his trial on the substantive charge, or in admission of evidence at his trial on the persistent violator sentence enhancement, and we conclude that the trial evidence was sufficient to support the jury's verdict finding Herrera guilty of battery on a peace officer. Therefore, the judgment of conviction and sentence are affirmed.

Chief Judge GRATTON and Judge GUTIERREZ **CONCUR.**

---

[5]  The State correctly notes that a mere clerical error is involved. The order for reimbursement, drafted by the prosecutor, cites the general restitution statute, I.C. § 19-5304, as the authority for the order rather than the correct statute authorizing reimbursement for a psychological evaluation, I.C. § 19-2522(1).