**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 38040**

| | | |
|---|---|---|
| **STATE OF IDAHO,** | ) | **2012 Unpublished Opinion No. 396** |
| | ) | |
| **Plaintiff-Respondent,** | ) | **Filed: March 8, 2012** |
| | ) | |
| v. | ) | **Stephen W. Kenyon, Clerk** |
| | ) | |
| **CARLOS MALVIN NAVARRETE,** | ) | **THIS IS AN UNPUBLISHED** |
| | ) | **OPINION AND SHALL NOT** |
| **Defendant-Appellant.** | ) | **BE CITED AS AUTHORITY** |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Darla S. Williamson, District Judge.

Judgment of conviction for second degree murder with firearm enhancement, affirmed.

Sara B. Thomas, State Appellate Public Defender; Justin M. Curtis, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; John C. McKinney, Deputy Attorney General, Boise, for respondent.

_____

LANSING, Judge

Carlos Malvin Navarrete appeals from the judgment of conviction entered upon a jury verdict finding him guilty of second degree murder, Idaho Code §§ 18-4001, 18-4002, 18-4003, and of an enhancement for use of a firearm in the commission of a crime, I.C. § 19-2520. Navarrete contends that the district court erred by denying his motion to continue the trial to obtain the presence of an alibi witness and that the court erred by denying his motion for a mistrial. We affirm.

1

# I.

# BACKGROUND

Navarrete was charged with shooting and killing Irving Romero at a Garden City residence on the morning of October 19, 2009. Prior to trial, Navarrete filed a notice of alibi[1] identifying four individuals who reportedly would testify that he was at a different residence in nearby Boise at the time of the shooting. At a pretrial hearing, on the Friday before trial was to commence on the following Monday, Navarrete moved to continue the trial in order to secure the attendance of Anthony Henderson, one of the identified alibi witnesses, who, according to the representation of defense counsel, had told a defense investigator early in the case that Navarrete was with him at Henderson's residence at the time of the shooting. Defense counsel said that Henderson had recently moved to California, and although the defense team had been in contact with Henderson by telephone, he was not currently returning their calls. The defense sought a continuance for the time necessary to obtain an out-of-state subpoena compelling Henderson's presence at trial.

In light of Henderson's lack of cooperation with the defense, the district court questioned whether he, if called as a witness, would actually provide testimony supporting Navarrete's alibi. The court decided to place a telephone call to Henderson in order to question him regarding the substance of his testimony if he were subpoenaed to the trial. Henderson quickly returned the district court's call, and in the presence of Navarrete and counsel for both parties, the district court questioned Henderson without placing him under oath. Navarrete did not object to this procedure. After initial obfuscations to the effect that he no longer wished to "be involved" in the matter, Henderson was pressed by the court to answer whether he and Navarrete were together at Henderson's residence at the time of the shooting. Henderson said that they were not. The court allowed the parties the opportunity to question Henderson further on the matter. Counsel for Navarrete said that he had no questions. Based upon Henderson's statements, the district court concluded that the defense had failed to show that a continuance was necessary.

Navarrete claims error in this denial of his request for a continuance and in the court's denial of Navarrete's subsequent motion for a mistrial after the prosecutor, in front of the jury, referred to Henderson's refutation of Navarrete's alibi claim.

---

[1]     *See* Idaho Criminal Rule 12.1.

## II.

## ANALYSIS

### A.    Motion for Continuance

Navarrete first asserts that the district court erred by denying his motion to continue the trial.  The decision whether to grant a continuance rests within the discretion of the trial judge. *State v. Nunez*, 133 Idaho 13, 21, 981 P.2d 738, 746 (1999).  "Trial judges necessarily require a great deal of latitude in scheduling trials.  Not the least of their problems is that of assembling the witnesses, lawyers, and jurors at the same place at the same time, and this burden counsels against continuances except for compelling reasons."  *State v. Cagle*, 126 Idaho 794, 797, 891 P.2d 1054, 1057 (Ct. App. 1995) (quoting *Morris v. Slappy*, 461 U.S. 1, 11 (1983)).  To warrant reversal on appeal, an appellant must show prejudice from the denial of a request for a continuance.  *Cagle*, 126 Idaho at 797, 891 P.2d at 1057.  Unless an appellant shows that his substantial rights have been prejudiced, appellate courts can only conclude that there was no abuse of discretion.  *Id.*

To establish error from the denial of a continuance that was sought because of a witness's absence, a defendant must show, among other things, that the witness's testimony would have been material to his defense.  *State v. Waggoner*, 124 Idaho 716, 722-23, 864 P.2d 162, 168-69 (Ct. App. 1993).  Here, Henderson's responses to the district court's questions indicate that he would not have provided testimony supportive of Navarrete's defense.  Navarrete suggests, however, that Henderson may have been lying when he spoke to the district court, and he asserts that because Henderson was not placed under oath, his statements should be reviewed with greater scrutiny.  We are not persuaded.  Idaho Rule of Evidence 603 requires only that a witness be placed under oath before "testifying," and Henderson was not testifying nor did Navarrete request that the district court place Henderson under oath before questioning him.  More importantly, Navarrete posits no logical reason why Henderson's earlier unsworn statement to the defense investigator was more likely to be truthful than his similarly unsworn statement to the court.

Navarrete also asserts that the continuance should have been granted because even if Henderson would have testified at trial that he was not with Navarrete at the time of the shooting, the defense could still have impeached him with his prior inconsistent statement to the defense investigator.  In order for an issue to be raised on appeal, the record must reveal an adverse

3

ruling that forms the basis for the assignment of error. *State v. Pickens*, 148 Idaho 554, 557, 224 P.3d 1143, 1146 (Ct. App. 2010). Navarrete's claim of error is not preserved for review, for the only basis on which he sought a continuance in the district court was that Henderson would provide alibi testimony; Navarrete never argued to the district court that a continuance was necessary even if Henderson denied the alibi so that he could be impeached. The district court was not asked to rule and did not rule on this issue. Therefore, we will not address it.[2]

Finally, Navarrete argues that the district court abused its discretion in denying the continuance because if the defense had been afforded time to obtain Henderson's trial presence, Henderson may have changed his mind concerning the content of his testimony. This assertion is nothing but speculation and is insufficient to show that the denial of a continuance deprived Navarrete of evidence material to his defense. If the defense possessed actual evidence that Henderson had later changed his mind concerning his testimony, Navarrete could have moved for a new trial in the district court, pursuant to Idaho Code § 19-2406(5) or (7), taking that opportunity to present to the trial court affidavits or other evidence that would demonstrate prejudice from the court's earlier denial of the motion for a continuance. Absent such evidence, there is no basis for this Court to conclude that Navarrete was prejudiced by the district court's refusal of a continuance. *State v. Hawkins*, 131 Idaho 396, 406, 958 P.2d 22, 32 (Ct. App. 1998).

Because Navarrete has not shown that Henderson's testimony would have been material to the defense, he has not demonstrated error in, or prejudice from, the district court's denial of a continuance.

## B. Motion for Mistrial

Navarrete next asserts that the district court erred by denying his motion for a mistrial after the prosecutor improperly informed the jury that Henderson did not support Navarrete's claim that he was with Henderson when Irving Romero was shot.

Navarrete testified at trial that on the morning in question his friend, Mike Stolp, drove him to Henderson's house, that Henderson and his friend Vaughn were there, and that Navarrete

---

[2] Moreover, because Navarrete did not raise this concern before the district court, the State was not afforded the opportunity to object to a defense tactic of calling Henderson as a witness for the primary purpose of placing otherwise inadmissible evidence (his hearsay statements to the investigator) before the jury under the guise of impeachment. *See State v. Hoover*, 138 Idaho 414, 420, 64 P.3d 340, 346 (Ct. App. 2003); *State v. Wood*, 126 Idaho 241, 248, 880 P.2d 771, 778 (Ct. App. 1994).

did not leave Henderson's residence until he was picked up by Stolp after the shooting occurred. On cross-examination the prosecutor reminded Navarrete of the hearing on his motion for a continuance during which Henderson had been questioned as to whether he and Navarrete were together at Henderson's house at the time of the shooting. The prosecutor then asked, "[Henderson] doesn't agree with you, does he?" The defense objected to the question on hearsay grounds and moved for a mistrial. The court denied the motion for a mistrial, but sustained the objection, struck the prosecutor's question and directed the jury to disregard it. Navarrete argues that the district court's corrective instruction was an insufficient remedy for the wrong done and that the court should have declared a mistrial.

When the denial of a mistrial motion is posited as error on appeal,

> the question on appeal is not whether the trial judge reasonably exercised his discretion in light of circumstances existing when the mistrial motion was made. Rather, the question must be whether the event which precipitated the motion for mistrial represented reversible error when viewed in the context of the full record. . . . Our focus is upon the continuing impact on the trial of the incident that triggered the mistrial motion. The trial judge's refusal to declare a mistrial will be disturbed only if that incident, viewed retrospectively, constituted reversible error.

*State v. Sandoval-Tena*, 138 Idaho 908, 912, 71 P.3d 1055, 1059 (2003) (quoting *State v. Shepherd*, 124 Idaho 54, 57, 855 P.2d 891, 894 (Ct. App. 1993)). An error will be deemed harmless if the reviewing court is able to declare beyond a reasonable doubt that the error did not contribute to the verdict. *State v. Perry*, 150 Idaho 209, 221, 245 P.3d 961, 973 (2010); *State v. Herrera*, 152 Idaho 24, 31-32, 266 P.3d 499, 506-07 (Ct. App. 2011).

A prosecutor engages in misconduct when he or she, knowing the answer is inadmissible, asks a question in such a manner that the jury is able to infer what the answer would have been simply from the question asked. *State v. Christiansen*, 144 Idaho 463, 469, 163 P.3d 1175, 1181 (2007). The prosecutor's question here was a step above what is impermissible as it did not require the jury to infer anything--the leading question itself revealed what Henderson had said about Navarrete's alibi. The information conveyed by the question was inadmissible hearsay, I.R.E. 801, and the State does not argue otherwise on appeal.

We conclude that the prosecutor's question, though plainly improper, was harmless. First, this Court generally presumes that the jury followed a trial court's instruction to disregard an improper question or response. *See State v. Hedger*, 115 Idaho 598, 601, 768 P.2d 1331,

1334 (1989); *State v. Rolfe*, 92 Idaho 467, 471, 444 P.2d 428, 432 (1968); *State v. Boothe*, 103 Idaho 187, 192, 646 P.2d 429, 434 (Ct. App. 1982). Second, the prosecutor's disclosure about Henderson was not the only information heard by the jury that undermined Navarrete's claim that he was elsewhere when the victim was shot. In his testimony, Navarrete identified three people who allegedly could confirm his presence at the Henderson house at the time of the shooting: Henderson, his friend Vaughn, and Stolp, the man who Navarrete said had both dropped Navarrete at Henderson's house and later picked him up there. By the close of the case, the jury was well aware that none of these people supported Navarrete's testimony. Neither Henderson nor Vaughn testified at all. Stolp did testify, but not in Navarrete's favor. Stolp said that he, Navarrete, and Jesse Salinas drove together in Stolp's car to the residence where the shooting occurred and that when the three men arrived a number of people were already present, including the decedent Irving Romero, Holly Peterson, Jennifer Israel, and Elizabeth Chinea. Stolp said that Navarrete and Romero argued, and when Romero tried to run from the residence, Navarrete shot him in the back. Four other witnesses, Salinas, Peterson, Israel, and Chinea also gave testimony indicating that Navarrete was the shooter.[3] Yet another witness, Janet Wallace, who was a friend of Navarrete, testified that he later admitted to her that he had shot Romero.

Because five at-the-scene eyewitnesses identified Navarrete as the shooter and a sixth witness said he had confessed to the murder, Navarrete's claim that he was elsewhere at the time was not a defense with any likelihood of success. The prosecutor's improper revelation of Henderson's inadmissible hearsay statement further refuting Navarrete's story, added little to the accumulation of evidence that already thoroughly contradicted Navarrete's claims. On this record, we are convinced that the prosecutor's erroneous revelation of hearsay did not contribute to the verdict. Therefore, there is no reversible error in the denial of Navarrete's motion for a mistrial.

---

[3] Stolp, Salinas, and Peterson did not testify that they personally observed the pistol in Navarrete's hand, but each of them testified to facts placing Navarrete in an isolated position with respect to Romero where only Navarrete could have been the shooter. Israel and Chinea, on the other hand, each said that they personally observed a pistol in Navarrete's hand and saw him shoot Romero. All of the witnesses knew Navarrete personally.

## III.

## CONCLUSION

The district court did not err in denying Navarrete's motion for a continuance of the trial to secure a witness's attendance where the witness would not have aided the defense. Nor did the district court err in denying the defense motion for a mistrial. Therefore, the judgment of conviction is affirmed.

Chief Judge GRATTON and Judge GUTIERREZ **CONCUR.**